[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 148 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 150 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 151 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 152 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 153 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 154 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 155 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 156 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 157 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 158 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 159 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 160 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 162 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 163 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 164 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 165 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 166 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 167 
If the transaction between the plaintiff's testator and Slate, Gardiner Howell is to be deemed a mere loan of money, there being no time designated for payment, it became presently due, and the statute of limitations began to run from the date of the receipt, and the action is barred, unless the payment by the firms of Slate, Gardiner Co. and Slate Co. operated to revive the debt, and thus prevent the running of the statute.
If, however, the transaction was not a loan, but a deposit of the money by the testator with Slate, Gardiner Howell, to be repaid only upon demand, then the action is not barred, and the judgment should be affirmed.
The distinction between a loan and a deposit of money to be used by the depository is not a broad one, but sufficiently so to have enabled courts and elementary writers on the law to establish rules for both species of contract.
By a loan of money is meant the delivery by one party, who is called the lender, to, and the receipt by the other party, who is called the borrower, of a given sum of money, upon an agreement, express or implied, to repay the sum loaned with or without interest. A loan is usually made at the request and for the benefit of the borrower, and differs from the commodatum of the civil law in this, that in the latter the specific thing loaned was to be returned; whereas, by the other, the thing loaned may be consumed, and the depository discharged himself by returning another thing of the same value, or its equivalent in money.
A deposit is commonly defined to be a naked bailment of goods to be kept without recompense, and to be returned when the bailor shall require it. (Story on Bailments, 3, § 4.) *Page 168 
A deposit of money with a bank or private person is not, therefore, the deposit of the civil law, nor is it what in that law was designated by the term mutuum, which was a loan of property for consumption and to be returned in kind, and without interest or compensation for the use, but it is what Pothier calls an irregular deposit, which differed from a mutuum in this, that the latter has principally in view the benefit of the receiver, the former the benefit of the bailor. (Story on Bailments, 61.)
In cases of mutuum the party borrowing was not held to pay interest upon the money lent; but in cases of irregular deposit, interest was due by the depository, both ex nudo pacto and exmora. This distinction between the two classes of deposit, as to interest, is not recognized by our law. The depository being liable in each for interest, in the event of a breach of duty.
A deposit of money with a bank or private person is what is known in the civil law as a mutuum or irregular deposit — the distinction between the two kinds of deposit not being recognized by the common law.
When money is borrowed, and no time of payment is fixed by the contract of loan, the debt, as already stated, is instantly due, and an action may be brought without demand — the bringing of the action being a sufficient demand to entitle the lender to recover. (Chitty on Contracts, 734; Norton v. Ellam, 2 M. 
W. 461.)
Even if the debt is by the terms of the agreement to be paid on demand, yet no special demand is necessary; the money being due without it.
In the cases of deposits, however, a demand was by the civil law, and is now by our law absolutely essential to a right of action, unless there was a wrongful conversion or some loss by gross negligence on the part of the depository. (Story on Bailments, 82.)
In case of a mutuum or irregular deposit, a demand was necessary to perfect the liability of the depository. It is *Page 169 
said by Pothier (See his work on Contracts, by Evans, 2 Vol. 126): "When a man deposits money in the hands of another to be kept for his use, the possession of the custodian ought to be deemed the possession of the owner until an application and refusal, or other denial of the right; for, until then, there is nothing adverse, and I conceive that upon principle no action should be allowed in these cases without a previous demand — consequently, that no limitation should be computed further back than such demand."
In Story on Bailments (p. 66 § 88), it is said that "in the ordinary cases of deposits of money with banking corporations or bankers, the transaction amounts to a mere loan or mutuum, or irregular deposit, and the bank is to restore not the same money but an equivalent sum whenever it is demanded."
In Downes v. Phoenix Bank of Charlestown, (6 Hill, 297), the plaintiff sued to recover money deposited with the defendant, a foreign corporation, and on the trial, after proof of the deposit was made, the defendant's counsel moved for a nonsuit on the ground that the plaintiff was bound to prove a demand before suit brought. The motion was denied, and there was a verdict for the plaintiff. A new trial was granted by the supreme court, on the ground that an action did not lie until after demand made. Justice BRONSON, after remarking that the deposit of money with a banker is not strictly a deposit nor bailment of any kind, but is a mutuum or irregular deposit, and that it is substantially a loan to the bank, says: "still the commonly received opinion is that the banker cannot be sued for the money until after the customer has drawn for it or in some other way required its repayment, * * * and if such be the nature of the contract the banker is not in default, and no action will lie until payment has been demanded." In a subsequent part of his opinion, he says that the bringing of an action is not in such a case a sufficient demand, but that an actual demand must be made. *Page 170 
The reason assigned by the learned judge, why a special demand should be made in such a case, is "that no one could desire to receive money in deposit for an indefinite period with a right in the depositor to sue the next moment and without any prior intimation that he wished to recall the loan." This presents the whole argument. The injustice of the opposite rule is so apparent that it needs but to be stated in order to be rejected.
The question recurs, was the transaction between the plaintiff's testator and Slate, Gardiner Howell, a loan, or was it a deposit? The paper which was given by the firm to the testator is not conclusive on that subject, and we must resort to the circumstances attending the transaction in order to arrive at the intention of the parties. For in the construction of this contract, as of all others, the intention of the parties must control.
The testator was a sailor, and having earned $1,000 for which he had no present use, applied as it would seem, to Slate, Gardiner Howell, who were engaged in the oil and whaling business, and thereby acquainted with the people of Sag Harbor, of which Howell, one of the firm, and the testator were natives, to receive the money on deposit, paying for the use of the same six per cent interest. This was not an ordinary loan of money. Such a loan is usually made at the request of and for the benefit of the borrower. If any voucher is given, it is a note by which the borrower promises to pay the money on demand, or at some future day. In this case the money was received by the firm at the request of and for the benefit primarily of the testator, and the voucher given contains a mere admission of the receipt of the money without any promise to repay it. If the money had been left with a bank, instead of Slate, Gardiner Howell, it would have been credited on the books of the bank to the testator, and if any voucher had been given it would have been a certificate that the $1,000 had been deposited by the testator to his credit. If then, *Page 171 
the transaction with the bank would have been a deposit entitling the bank to a demand of the money before an action could be brought, can any reason be assigned why a deposit with an individual should be deemed a mere loan which could be sued for without a demand? The civil law admitted of no such distinction, and there is no decision at common law which sanctions it, that I have been able to find.
There was undoubtedly a loan by the testator to the firm, of the $1,000, but it was just such a loan as every depositor in a bank makes with the bank, and the rights and liabilities of the parties must be, upon principle, as I insist they are upon authority, identical.
Questions as to the rights and remedies of depositors have generally, if not altogether, arisen in actions by and against banks; but it is every day's practice for persons having surplus funds to deposit them with merchants, lawyers and other business men, and they are received as often as matters of favor to the person depositing as with a view to the advantage of the person receiving; and I apprehend that such persons believe that before they can be sued for the money a demand must be made of the deposit. Such a rule not only gives effect to the intention of the parties, but it is essentially just.
Why should a demand be held necessary in the case of a deposit in a bank, and unnecessary in case of a deposit with a private person? In both cases, the depository is not an ordinary borrower; that is to say, they do not solicit the deposit for their own benefit exclusively. In both they hold themselves out as willing to receive deposits, and to pay interest, perhaps, thereon. The same considerations which render proper a demand before suit, in the case of the one, are equally operative in the case of the other.
A distinction exists between a mere loan and a deposit. They are governed by different rules; and, in the absence of any legislative prohibition or of any rule of public policy, parties should be permitted to take upon them *Page 172 
selves the obligations of either form of contract which they deem proper, and the law should give effect to their intentions when ascertained.
I entertain no doubt but that the transaction in question was a deposit, and that the rights and liabilities of the parties are precisely the same as if the money had been in a bank; and hence, there was no right of action against the depositories until actual demand made; and the statute of limitations began to run from the same time. If such is the law, then the demand in question was not barred, and the judgment should be affirmed.
If, however, I am wrong in considering the transaction as a deposit, and it is to be treated as a loan, I am nevertheless of the opinion that the action is not barred.
If it is a loan, then the paper given by Slate, Gardiner 
Howell, to the testator, is in effect a promissory note on interest, and payable on demand.
Such a note was held in Merritt v. Todd (23 N.Y. 28), to be a continuing security, and was not dishonored until after actual demand. If it is a continuing security, and a demand is necessary to fix the time when the money specified therein becomes due, it must follow that the statute of limitations does not begin to run in favor of any of the parties to it until such demand is made. That statute commences to run against an action only from the time a right of action accrues; and within the doctrine ofMerritt v. Todd there is no right of action until demand. It is said this case of Merritt v. Todd does not apply to this case, because there the action was against an endorser, and the decision in that case must be confined to the endorser, and does not and cannot apply to the maker. It is impossible to restrict the language of the chief judge in that case to the case of an endorser. He sets out, in his opinion, by remarking that it was left uncertain when a note payable on demand with interest matured; that in England such a note was held to be a continuing security, and that the *Page 173 
holder might make demand at any time, and until such demand the endorser was not discharged; while in this it was held to be necessary to make a demand within a reasonable time, or the endorser would be discharged. The question as to when such a note became due was frequently as important in the case of the maker as of the endorser. The former was entitled to avail himself of any defense he might have against the payee, if the holder obtained it after maturity. Judge COMSTOCK expressly refers to the importance of the question to both makers and endorsers of such paper, and lays down a rule which he thinks is best calculated to remove uncertainty, and which will enable all persons dealing in such paper to ascertain their rights and liabilities in respect to it. The learned judge expresses himself thus emphatically upon this point: "But whatever may be the rule when the security is not on interest, we think that a note payable on demand with interest is a continuing security from which none of the parties are discharged, until it is dishonored by an actual presentment and refusal to pay. The loan or forbearance of money may be for a definite or an indefinite time. If the parties declare in the written instrument, which is the only evidence of their agreement, that the money shall be paid on call with interest in the meantime, a productive investment of the sum for some period of time is plainly intended. What then is that period? The only answer which can be given is, that it is indefinite or indeterminate, and ascertainable only by an actual call for the money."
It seems to me impossible to say that the reasoning of the learned judge does not apply as well to the maker of such paper as to the endorser; and if it does, then the conclusion is irresistible that there is no liability on such a note of any party until actual demand.
No question is made by counsel, nor was there any raised on the trial, as to whether the firm of Slate, Gardiner Howell was discharged by the transfer of the deposit to *Page 174 
the firm of Slate, Gardiner Co., or whether that firm was discharged by a like transfer to Slate Co. I have not, therefore, examined that question; nor did I deem it necessary to inquire whether the payment of interest by those last-named firms prevented the running of the statute of limitations.
I am of the opinion that the judgment and order appealed from should be affirmed, with costs.
INGRAHAM, J., also read an opinion in favor of affirmance.
DENIO, Ch. J., concurred; holding that the payment of interest prevented the statute from running. But he agreed with WRIGHT, J., that no demand was necessary.
JOHNSON, DAVIES and HOGEBOOM, JJ., were for affirmance.