DANIEL G. FORT, Assignee of James H. Goldey, *vs.* JAMES
W. McCULLY and another.

It *seems* that *deposits* made with a private banker who carries on a general bank-
ing business, (such as discounting notes and receiving deposits subject to
the call of the depositor,) are not to be deemed *due* until demand.

If the banker transfers the depositor's notes before demand made of the de-
posit, the latter, *it seems*, cannot, under the decisions of the courts of this
State, enforce a set-off against the holder, either at law or in equity.

Where, however, a banker failed and made a general assignment of his prop-
erty, including the notes of the depositor, whose deposit was not then due,
and directed his assignee to pay his debts in the same order and manner in
which the estate of a bankrupt is required to be used and applied for the
payment of debts proved and allowed under the provisions of the bankrupt
act; *Held,* that the depositor was entitled to his set-off, and that the assignee
could only recover the balance after deducting the deposit.

CASE agreed upon to submit a controversy without ac-
tion, under section 372 of the Code.

From the year 1863, to and including the 8th day of
September, 1869, James H. Goldey was a private banker,
(but not an individual banker incorporated under the stat-
ute,) doing business in the city of Oswego. The business
of said banker, during said time, was the purchase and sale
of gold, the making and cashing of drafts, cashing checks,
discounting notes and bills of exchange, and taking money
on deposit, subject to the call of the depositor.

On the 30th day of August, 1869, said James H. Goldey
discounted for the defendants a promissory note in writing,
described as follows: dated August 30, 1869, for $1000;
payable thirty days from the date, at the National Park
Bank, New York, to the order of J. W. McCully, in-
dorsed by him and signed by McCully and Richards.

On the 2d day of September, 1869, the said James H.
Goldey discounted another promissory note for and at the
request of the defendants, described as follows: dated
September 2, 1869, for $300, payable thirty days from
date at the National Park Bank, New York, to the order

of J. W. McCully, indorsed by J. W. McCully, and signed by McCully and Richards.

During the time from January 1, 1869, to the time of the submission of this case, the defendants were and still are copartners, doing business as merchants at the city of Oswego, under the firm and style of McCully & Richards.

The said James H. Goldey, becoming insolvent, on the 9th day of September, 1869, made an assignment of all his property to Daniel G. Fort, for the benefit of his creditors generally; and on the day last above mentioned, said assignment was delivered to said Fort, who thereupon accepted the trust, and immediately took possession and charge of all the property belonging to said Goldey at the time of said assignment, and among the same, the two notes above described. The said Daniel G. Fort is now the legally qualified assignee of said James H. Goldey.

The assignment contained the following provision : and the said Daniel G. Fort shall use and apply the said fund for and towards the payment of the debts of the said James H. Goldey in the same order and manner in which the estate of a bankrupt is required to be used and applied, for and towards the payment of the debts of such bankrupt, proved and allowed under and in pursuance of the provisions of the act of congress of the United States, entitled " An act to establish a uniform system of bankruptcy throughout the United States," approved March 2, 1867.

Before the time of the making of such assignment, the defendants, or copartners herein before described, had been in the habit, from time to time, of depositing money in the bank of said J. H. Goldey, subject to their check or call. On the 9th day of September, 1869, at the time of the making and delivery of said assignment by Goldey to Fort, the defendants had on deposit in said bank, the sum of the defendants' demanded, and payment thereof was refused on the 16th day of September, 1869, and no demand was made before that day.

After the notes and each of them became due, the said Daniel G. Fort, as such assignee, demanded payment thereof of the defendants, who thereupon offered to pay to said assignee the sum due on said notes, less the amount of said deposit, and offered therewith, in payment and satisfaction of said notes, to set off the said sum of $280.38, being the amount of said deposit. The said assignee, (this plaintiff,) refused to allow said deposit as an offset in part payment of the notes, but demanded in payment of said notes the whole amount called for thereby.

The plaintiff claims that said deposit, to wit, $280.38, is not legal, proper or equitable as an offset, and should not be allowed in part payment of said notes.

The defendants claim that said deposit, to wit, $280.38, is a legal, equitable and proper offset in part payment of said notes, and should be allowed as part payment thereon.

*A. Perry*, for the plaintiff.

*N. W. Nutting*, for the defendants.

*By the Court*, MORGAN, J.    At the time the debtor, *James H. Goldey*, made his general assignment to the plaintiff for the benefit of his creditors, the demand against him in favor of the firm of McCully & Richards (the defendants) was not due. The deposit was payable on demand, and no demand was made until several days after the assignment. (*Downer* v. *The Phœnix Bank*, 6 *Hill*, 297. *Clapp* v. *The Hudson River R. R. Co.*, 19 *Barb.* 461. *Payne* v. *Gardiner*, 29 *N. Y.* 146.)

The assignor, Goldey, having appropriated or assigned the notes of McCully & Richards to pay his creditors generally, before his debt became due to them, the set-off could neither be enforced at law nor in equity, according to the decisions of the Court of Appeals. (*Bradley* v. *Angel*,

3 *Comst.* 475. *Beckwith* v. *The Union Bank,* 5 *Seld.* 211. *Martin* v. *Kunzmuller,* 37 *N. Y.* 396.)

The only remaining question is whether the assignor has not by the terms of his assignment required the assignee to allow the offset.

I think it is entirely clear, upon the authorities, that if Goldey had been declared a bankrupt, the assignee could only recover the balance after deducting the sum standing to the credit of the defendants upon his books. By section 20 of the bankrupt act, it is enacted " that in all cases of mutual debts or *mutual credits* between the parties, the *accounts between them shall be stated, and one debt set off against the other, and the balance only* shall be allowed or *paid,* but that no set-off shall be allowed of a claim not provable against the estate." The defendants' demand was *provable,* though not due at the time of the assignment. (§ 19.) And it was also a case of "*mutual credits.*" (*Rose* v. *Hoyt,* 8 *Taunt.* 499. 2 *Smith's Lead. Cas.* 179, *and notes.*)

It is also apparent that if Goldey had undertaken to make a distribution of his property contrary to the provisions of the bankrupt act, the defendants could have availed themselves of that act to drive him into bankruptcy, and thus obtained the benefit of its provisions. After demand, these defendants, as creditors, could have proceeded against him at once, and thus avoided any assignment of the debtor which made a disposition of his property contrary to the policy of the bankrupt act, and in contemplation of bankruptcy. This assignment, upon its face, shows that it was made in contemplation of bankruptcy, and as against an assignee duly appointed under the bankrupt act, or those who should claim under him, it would unquestionably be void as a fraud upon the rights of creditors who should come in and prove their debts under the decree in bankruptcy. (*See* § 35 *of the Bankrupt Act; and per Walworth, Chancellor, in Seaman* v.

Fort *v.* McCully.

*Stoughton,* 3 *Barb. Ch.* 348; *Bell* v. *Leggett,* 3 *Seld.* 176, 180, 181.) It was doubtless in view of these decisions that Goldey felt constrained to insert a provision in his assignment requiring his assignee to apply the proceeds of his property "towards the payment of his debts in the same order and manner in which the estate of a bankrupt is required to be used and applied; for and towards the payment of the debts of such bankrupt proved and allowed under and in pursuance of the provisions of the act of congress," &c.

The plaintiff's counsel argues that this relates to the order and ratio of distribution of the fund, but not to the mode of creating the fund. The language of the provision in the assignment is not very clearly expressed; but if it means anything, it requires the assignee to use and apply the proceeds of Goldey's property towards the payment of his debts in the order and in pursuance of the provisions of the act of congress. As that act provides in express terms that an account "shall be stated, and one debt set off against the other, and the balance only allowed or paid," no fund can be created under this provision where there are mutual credits, except the balances thus found due the bankrupt. To allow the plaintiff to collect the notes without allowing the defendants' offset, would, indirectly it is true, but effectually, result in the payment of the assignor's debts, not "in the order and in pursuance of the provisions of the act of congress, but contrary to the rule of distribution therein prescribed, by allowing to the defendants, whose demand was not due at the time of the assignment, only a *pro rata* dividend, instead of the whole amount, as required by the act of congress. But the defendants are to be paid, by the very terms of the assignment, *in the order and in pursuance of the provisions* of the act of congress. The plaintiff desires to avoid this provision by paying the defendants a *pro rata* dividend. Under the bankrupt act they are clearly entitled to be allowed the

Fort *v.* McCully.

full amount of their demand. The only criticism to be made is, that the word "allowed" is not used by the assignor; but it is obvious that the word "payments," in the assignment, ought to be construed so as to include the allowance of set-off, in the case of mutual debts and credits. The assignee may thus conform to the provision of the act of congress allowing the defendants their set-off, which is one mode of paying the debt. This construction of the assignment will accomplish what the assignor clearly intended by his language.

To give it the construction contended for by the plaintiff's counsel, would invite proceedings by creditors who had offsets which were inadmissible under the decisions of the courts of this State, to compel the assignor to go into bankruptcy, when the assignee would be required to allow them in full; or in other words, these demands would be *paid* in full.

In my opinion, the plaintiff can only recover the balance due the assignor, after allowing the defendants' offset.

The terms of the assignment are so expressed as to justify the assignee in following out the requirements of the act of congress in the distribution of the estate; and this can only be done by the allowance or payment of the defendants' demand in full.

According to the stipulation of the parties, a judgment should be entered in favor of the plaintiff, and against the defendants, for the amount of the notes and interest, less the sum of $280.83, and interest thereon from the 9th of September, 1869, and in favor of the defendants, against the plaintiffs, for their costs and disbursements.

Judgment accordingly.

[ONONDAGA GENERAL TERM, January 5, 1870. *Mullin, Morgan* and *Doolittle,* Justices.]