CITY BANK OF ST. PAUL (VANDERHOOF v.). See Case No. 16,842.

---

## Case No. 2,742.

In re CITY BANK OF SAVINGS, LOAN & DISCOUNT.

[6 N. B. R. (1873) 71;[1] 4 Chi. Leg. News, 81; 6 West. Jur. 65.]

District Court, D. California.

ASSIGNMENT OF DEBT BY CREDITOR OF INSOLVENT TO DEBTOR OF SAME—OFFSET.

A creditor of an insolvent who has reasonable ground to believe him to be such, can assign his demand to a debtor of the insolvent whose debt is not yet payable, so as to enable the latter to offset the demand so assigned to him against the debt due from him to the insolvent, the latter debt having become due and payable at the time the offset is claimed.

[Cited in Hitchcock v. Rollo, Case No. 6,535; Hovey v. Home Ins. Co., Id. 6,743; Lloyd v. Turner, Id. 8,436; Mattocks v. Lovering, 3 Fed. 213.]

HOFFMAN, District Judge. The question presented on the facts as developed by the evidence taken by the register, is whether a creditor of an insolvent who has reasonable ground to believe him to be such, can assign his demand to a debtor of the insolvent, whose debt is not yet payable, so as to enable the latter to offset the demand so assigned to him against the debt due from him to the insolvent, the latter debt having become due and payable at the time the offset is claimed. The register was of opinion that the debts and credits which it sought to offset against each other were not "mutual" within the meaning of the statute, inasmuch as at the time of the bankruptcy the debt owed by the bank was due and payable, while the debt to it was not.

The question whether a debt payable in futuro could be set off against a debt payable in praesenti was one of the earliest which

---

[1] [Reprinted from 6 N. B. R. 71, by permission.]

arose under the English bankrupt act. It was decided in the affirmative on the ground that though there might not be debts mutually payable between the parties, there were mutual credits, and that the case came within the equity of the statute. Ex parte Prescot, 1 Atk. 230; Dobson v. Lockhart, 5 Term R. 133; Alsager v. Currie, 12 Mees. & W. 751; Ex parte Wagstaff, 13 Ves. 65; Sheldon v. Rothschild, 8 Taunt. 156; Atkinson v. Elliott, 7 Term R. 378; Robs. Bankr. 265. The same question has received a similar solution in the United States, under both the former and the present bankrupt acts. In Marks v. Barker [Case No. 9,096], it was held by Washington, J., that the acceptor or endorser of a bill of exchange who has paid the bill after the bankruptcy of the drawer, may offset the same against the bankrupt's assignees, the case being one of mutual credits given before the bankruptcy, although the money was not paid until after. In the case of Catlin v. Foster [Id. 2,519], Deady, J., after a careful consideration of the whole subject, held that a party who has acted under a deed of trust declared void, as being contrary to the provisions of the bankrupt act, may set off the value of the services rendered by him under the deed, against the claim of the assignees for property of the bankrupt received by him. In Fort v. McCully, 59 Barb. 87, cited in A. L. Reg., it was held that deposits made with a private banker, subject to the call of the depositor, are not to be deemed due until demand, and, therefore, if the banker transfers the depositor's notes before demand, the latter it seems, cannot enforce a set-off against the holder, either at law or in equity. But that where the banker being insolvent, made a general assignment, including the notes of the depositor whose deposit was not yet due, and directed his assignee to pay his debts in the same order and manner in which the estate of a bankrupt is required to be used and applied for the payment of debts proved and allowed under the provisions of the bankrupt act, the depositor was entitled to his set-off, and the assignee could only recover the balance after deducting the set-off.

These decisions seem not only the unavoidable result of the express terms of the bankrupt act, but necessarily required by considerations of reason and justice. By the nineteenth section, all debts existing, but not payable until a future day, may be proved against the estate (a rebate of interest being made when no interest is payable), and by the twentieth section, mutual debts and credits are required to be set-off against each other whenever the claim sought to be used as a set-off is "in its nature a debt not provable against the estate and has been purchased or transferred after the filing of the petition." A claim, therefore, for a debt provable against the estate, and transferred before the filing of the petition, falls within the very terms of the section. The rule thus established seems indispensable to the attainment of justice. "Natural equity," says Lord Mansfield, in Green v. Farmer, 4 Burrows, 2214–2220, "requires that cross demands should compensate each other by deducting the less sum from the greater, and that the difference only is the sum which can be justly due. But positive law, for the sake of the forms of proceeding and convenience, has said that each must sue and recover separately in separate actions." The civil law followed what Lord Mansfield declares to be the dictate of natural equity. 2 Evans, Poth. 98. And in England and most of the states of the Union, statutes of set-off have been enacted, allowing cross demands to be used as set-offs in specified cases; and even courts of common law have long been in the habit of allowing judgment to be set-off against each other. But even in those where the counter claim cannot be set up as a defence pro tanto to the action, the party holding it can sue and recover judgment upon it. The refusal to allow him to use it as a set-off leaves his right to enforce his demand unimpaired. But when a bankruptcy has occurred, the creditors' right of action is suspended. The whole estate of the debtor is taken possession of by the court, and the holder of an unsecured claim against it is entitled merely to his pro rata share of the assets. It would therefore be the height of injustice to compel a debtor of the bankrupt to pay to the assignee the full amount of his debt, while for a demand of equal or greater amount against the bankrupt he can only receive such dividends as the assets may afford. A similar injustice would be done to the estate of the bankrupt, (if offsets were not allowed,) where the creditor has also become bankrupt. For the estate of the creditor might receive dividends on the debt due him, while it might be insufficient to pay dividends of a like amount on the debts due by him. To avoid these results, liberal and comprehensive provisions for the allowance of offsets have been made in the bankrupt acts of England and America; but their object would be in a great measure defeated, if their operation were restricted to those debts only, which, at the time of the bankruptcy, were not only due but payable. The objection therefore that the debt of the debtor who seeks the benefit of the set-off was not payable until after the filing of the petition, must be overruled.

The second objection urged has more force. It is contended that the transaction was in its nature a fraud upon the bankrupt act; that its object and effect was to hinder or defeat its operation and to evade its provisions, by preventing assets from coming into the hands of the assignee, and by indirectly enabling a creditor to obtain full satisfaction of his demand by selling to a debtor of the bankrupt a claim to be used by him as a set-off. That such may be the effect of this transaction, if this set-off be

allowed, I am not prepared to deny. But I am unable to see what authority this court has to prevent it. By the terms of the act, all mutual debts and credits must be set off against each other, and the balance only allowed or paid subject to two conditions: first, that the claim is in its nature provable against the estate; and second, that it has not been transferred or purchased by the debtor claiming the benefit of it, after the filing of the petition. This latter proviso contains an obvious negative pregnant, and implies a declaration that the claim may be used as a set-off, if acquired even by purchase, at any time before the commencement of the proceedings. Had congress seen fit to prohibit the acquisition of such claims, for the purpose of using them as set-offs by a debtor of a bankrupt who has reasonable cause to believe that the latter is insolvent, it would have been easy so to provide. But there is no such provision. And even if such a limitation upon the right to acquire or use a demand as a set-off had been imposed, it is reasonable to suppose that some period of time would have been fixed after which the transaction could no longer be questioned. By the thirty-fifth section, certain transfers intended to give a preference, or to hinder or delay the operation of the act, or to prevent the property of the bankrupt from coming into the hands of the assignee, are declared void, provided they have been made within four months and six months respectively before the filing of the petition. But if the court should declare in this case the transfer of the demand against the bankrupt void, and unavailable to the debtor as a set-off, for the reason that it would have the effect to give a creditor a preference, and to hinder and defeat the operation of the act, what period of time is it to assign within which the transfer can be avoided? Is it to adopt the period of four months, or six months, or some other arbitrary limitation? That some period of time should be fixed after which transfers analogous to this, and which the act pronounces void cannot be assailed, congress has clearly indicated.

It seems an unavoidable inference that if it had been intended to prohibit transfers like that in the case at bar, or rather to render them unavailable for the object intended, the act would not only have so declared in explicit terms, but a definite period would have been fixed within which its provisions should operate upon them; and that the court in the absence of any such provision, has no right to assume the legislative function by first declaring the transfer ineffectual, and then fixing an arbitrary period, after which it shall be held valid. The bankrupt act, moreover, being a special statute, and to a certain extent in derogation of rights existing at common law, or under state legislation, its provisions ought not to be construed under suggestions of its probable object, policy or spirit, to embrace cases not provided for by its terms. By the law of this state, and I presume of that of the most of the states, the claim set up in this case could be used by the debtor as a set-off in action brought against him by the bank. He who contends that it is made unavailable by the bankrupt act should point to some clear and unmistakable provision to that effect in the act.

It is also to be observed that by the amended insolvent law of Massachusetts, from which the provisions of the bankrupt act are in great part derived, the benefit of offsets acquired under circumstances like those of the case at bar was withheld. Congress, therefore, in omitting to incorporate that provision into the bankrupt act may justly be deemed to have intentionally declined to adopt it. It would seem, on the contrary, as if it had been designed in this particular to follow the English bankrupt act. The proviso in that act is as follows: "Provided that the party claiming the benefit of the set-off had not, when such credit was given, notice of an act of bankruptcy by such bankrupt committed." Under this proviso it was held, in an action brought by the assignees of certain bankers, that a party had a right to set-off notes of such bankers, taken by him after he knew they had stopped payment, but before he knew they had committed an act of bankruptcy. Hawkins v. Whitten, 10 Barn. & C. 217; Dickinson v. Cass, 1 Barn. & Adol. 343. And the act of bankruptcy must have been that on which the adjudication was founded, or one capable of sustaining it. Ex parte Birkett, 2 Rose, 71; Ex parte Sharp, 3 Mont., D. & D. 490; 8 Jur. 1012; Robs. Bankr. 272. But a debtor of this bankrupt will not be allowed to set-off a debt transferred to him after the bankruptcy, for the debt is to a third person, and the creditor cannot, after the bankruptcy, by a transaction with a third person, vary the relation in which he stood to the bankrupt at the time of the bankruptcy. Dickson v. Evans, 6 Term R. 57; Marsh v. Chambers, 2 Strange, 1234.

The rule established by these cases seems to have been adopted by congress in framing the provisions of the bankrupt act with regard to offsets. A debtor of the bankrupt is allowed to set-off a debt due to him from the bankrupt, provided it has been purchased by or transferred to him before the filing of the petition, i. e. before the bankruptcy. I think that these provisions must receive a similar construction to that given by the English courts to the closely analogous provisions of the English law. The objection is therefore overruled. It is also objected that the transfer of the debt sought to be set-off was not absolute, but conditional on the debtor's being allowed to avail himself of it. But I see no ground for this suggestion in the evidence. The claim of the depositor seems to have been regularly and formally

assigned to the debtor of the bankrupt, and the latter appears to be the legal owner and holder of it. My opinion is that the offset claimed should be allowed.