Kings County.—HON. W. L. LIVINGSTON, Surrogate.—
April, 1880.

## BROOKS *v.* BROOKS.

*In the matter of the final accounting of* CHARLOTTE
S. BROOKS, *administratrix, &c., of* WILLIAM BROOKS,
*deceased.*

Where it appears from the husband's own memoranda that he received his wife's separate property, and invested and re-invested the same, and deposited the securities, together with his own, in the joint names of himself and wife, and he subsequently converted the securities to his own use, and upon the death of the husband the wife presents a claim for the same against the estate, *Held,* that in the absence of any direct evidence as to the nature of the agreement under which the husband received the securities, these facts would warrant the presumption that the husband held the securities for safe-keeping, and that the statute of limitations did not begin to run until a demand and refusal, or until after the conversion of the securities.

The interest on securities left with a person for safe-keeping being payable as soon as collected, without demand, the statute of limitation as to such interest collected and not paid over runs from the time of the receipt of the interest by the bailee.

*It seems* that where the husband, living together with his wife, has the management of her property without compensation, and the wife has reason to expect that it is yielding an income, but allows her husband for several years to keep the interest, never objecting or taking any steps to compel payment of such interest to her, it will be presumed, in proceedings instituted after his death to recover such interest, that it was part of the original agreement for the management of her property, that he might keep the income.

THE facts appear in the Surrogate's opinion.

E. P. BELLAMY, *for the administratrix.*

SMITH & WOODWARD, *for Helen and Maria B. Brooks.*

GEORGE C. HARWARD, *guardian ad litem for infants.*

THE SURROGATE.—The administratrix, who is the

widow of the intestate, makes a claim against his estate, amounting to $4,000 and interest thereon, for money loaned and advanced by her to him.

Some of the next-of-kin dispute the claim and set up the statute of limitations ; they allege, also, that an action is now pending in the supreme court for that same cause of action and between the same parties.

The administratrix testified that she had received between $8,000 and $9,000 from her father's estate, and had never expended any of it.

Being precluded by section 829 of the Code from testifying as to any personal transaction or communication between herself and her husband relating to her claim, she introduced in evidence memoranda made by her husband, in his own handwriting, in his pocket diaries.    [After reciting the memoranda, the Surrogate proceeded :]

This evidence is sufficient, in the absence of anything to counteract the admissions of the intestate made in his own handwriting, to establish the fact that he had in his possession and under his control certain securities belonging to his wife, which he sold on February 9, 1872, for $4,080.    (Millspaugh v. Putnam, 16 *Abb.  Pr.*, 380.)

No part of this sum ever was repaid to Mrs. Brooks. The contestants insist, however, that the claim is barred by the statute of limitations.    This depends upon the terms of the agreement under which the intestate came into the possession of his wife's property.

It is claimed by the counsel for the administratrix, in his brief, that she testified, on cross-examination, that she gave her property to her husband for *safe-keeping ;* but I find no such testimony in the stenographer's minutes.

In her written application for a final accounting, which is sworn to, her claim is stated to be for " money loaned and advanced to the deceased in his lifetime, and used by the deceased in the course of his business and otherwise," while, on the other hand, the answer and objections to the account of the administratrix, filed by Helen and Maria D. Brooks, speak of the claim as being made " for the proceeds of bonds and property belonging to her (Charlotte S. Brooks), left with William Brooks for *keeping.*"

There is no direct evidence of the terms on which Mrs. Brooks delivered her property to her husband, but the evidence heretofore referred to warrants the inference that she did what most wives who have confidence in their husbands naturally would do, and that is that she turned over her property to him to be safely kept and managed by him as her agent, without compensation.

The testimony shows that for several years he actually did invest and manage her property for her, and the proof is far more consistent with the theory that she gave it to him for that purpose than with the idea that she loaned it to him.

The statute of limitations would not, therefore, begin to run against Mrs. Brooks's claim until after a demand and refusal, or perhaps not until after a conversion of the property to the use of the deceased, which dispenses with the necessity of a demand. (*Code*, § 410 ; Boughton v. Flint, 74 *N. Y.*, 476, 482 ; Davison v. Donadi, 2 *E. D. Smith*, 121 ; Payne *v.* Gardiner, 29 *N. Y.*, 146, 168.)

There is no proof that Mrs. Brooks ever demanded her property from her husband or ever attempted, in any way, to withdraw the management of it from him.

It does not appear what became of the $4,080 for which the deceased sold his wife's securities, in February, 1872; but I have examined the inventory of his estate on file in the surrogate's office, and it shows that he left an estate valued at about $1,500, consisting principally of cash on deposit with his bankers. No securities are returned.

It is clear, therefore, that the deceased had actually converted to his own use the greater part of his wife's property, intrusted to his care and management.

This conversion took place after February 9, 1872, though precisely when is left uncertain by the evidence, but at any rate it was within six years prior to the death of the intestate, which occurred in July, 1876; so that even if the statute of limitations began to run from the time of the conversion, it is not available as a defense in this proceeding; as the claim was not barred thereby at the time of the death of the intestate, and it is not pretended that this is not the first accounting of the administratrix. (L. 1868, ch. 594.)

The deceased collected the coupons attached to the securities which he held for his wife, as they became due. This interest was payable to Mrs. Brooks, if at all, as soon as it was collected, and without a demand. (Stacy v. Graham, 14 N. Y., 492; Power v. Hathaway, 43 Barb., 214, 219.) The statute of limitations therefore began to run against her claim to it from the time it was received by the deceased; the result is that the statute cuts off all the interest not collected by him within six years prior to his death.

But independently of that, where, as in this case, the husband and wife were living together, and the wife's

property was under the care and management of the husband, without compensation to him, and she had the right to expect that it was yielding an income, yet allowed him to go on for several years, keeping all the interest, without complaining or objecting, and for aught that appears, without taking any steps to make him pay it to her, or to prevent him from continuing to collect it, it may well be inferred, in proceedings instituted after his death to recover the amount, that it was part of the agreement under which he had the care and management of her property, that he might keep the income. (*Hill on Trustees*, 425, and note 1; *Clancy on Husband and Wife*, 352, 354, 355; Powell v. Hankey, 2 *P. W.*, 82.)

It has been well suggested that it might indeed prove a great hardship upon a husband who had probably depended on his wife's permitting him to receive her income as a gift, and on such a presumption might have lived in a more plentiful manner, the comfort whereof the wife must have shared in, if she afterwards should be allowed to make him a debtor for all this money. (Powell v. Hankey, 2 *P. W.*, 82.)

The deceased was not therefore chargeable with interest for not keeping the fund invested, or for merely mixing it with his own money; the administratrix is entitled, however, to interest on the amount actually converted by him to his own use, from the time of such conversion. But as the evidence does not disclose when the said conversion took place, except as to the sum of $1,500, interest can only be allowed on the balance of the said principal sum from the time of the death of the testator.

It is unnecessary to express any opinion in regard to

the defense of another action pending, as there is no proof before me on the subject.

Ordered accordingly.