In the Matter of the Estate of CHARLES HAYDEN, Deceased.

Surrogate's Court, New York County, December 6, 1940.

*Anderson, Gasser, Ferris & Anderson* [*William H. Hayes* of counsel], for Anna B. Ronaghan and James P. Ronaghan, as executors, etc., petitioners of Arthur J. Ronaghan, deceased.

*Chadbourne, Wallace, Parke & Whiteside,* for Erle V. Daveler, as executor, etc., petitioner.

*Charles F. Gehrmann,* for Edgar A. Doubleday, as executor, etc., petitioner.

*Hughes, Richards, Hubbard & Ewing* [*Charles E. Hughes, Jr.,* and Robert Brancher of counsel], for the Charles Hayden Foundation.

*Wickes, Neilson & Riddell* [*Nathan F. George* and *Gabriel E. Torre* of counsel], for James H. Dunn, doing business as Dunn, Fisher & Co., claimant.

*Harper & Matthews,* for J. Harris Warthman, as trustee, under section 77-B of the Bankruptcy Act, of the estate of La France Industries.

*Jerome M. Hirsch,* for the State Tax Commission.

*John J. Bennett, Jr., Attorney-General,* for the State of New York.

*Conboy, Hewitt, O'Brien & Boardman,* for William J. Brannan, respondent.

*Spence, Windels, Walser, Hotchkiss & Angell,* for Curtiss-Wright Corporation, respondent.

*Cullen & Dykman,* for the Brooklyn Home for Children.

*Proskauer, Rose & Paskus,* for the Mount Sinai Hospital.

*Anthony J. Romagna,* for Pennell N. Aborn, as guardian and committee of Ernest Saeger, an incompetent.

FOLEY, S. The issues in this accounting proceeding are disposed of as follows:

(1) A question is presented as to whether certain claims against the estate are barred by the Statute of Limitations. The claim of James H. Dunn, litigated as typical of the claims of other persons similarly situated, is based upon a credit balance in a brokerage account with the firm wholly owned by decedent. This credit balance existed in the account for some years prior to decedent's death, and the last communication between the parties in respect of it consisted of a statement of account by the brokerage firm showing a credit balance and a confirmation of the same more than six years before his death. The amount of the claim is not

in dispute, and the relevant facts are submitted in a written stipulation of the parties.

The surrogate holds that the stipulated facts and the conduct of the parties clearly establish that the transaction between the claimant and the decedent's firm constituted a deposit which was to be held until demand was made therefor. A demand was prerequisite to a right of action. (*Payne* v. *Gardiner*, 29 N. Y. 146, 168; *Boughton* v. *Flint*, 74 id. 476, 482; *Smiley* v. *Fry*, 100 id. 262; *Kowalow* v. *Buczkowski*, 248 App. Div. 847; *Kennedy* v. *Budd*, 5 id. 140.) The Statute of Limitations did not begin to run, therefore, until a demand had been made. (Civ. Prac. Act, § 15, subd. 2.) Since no demand was made for the sum on deposit until 1939, the Statute of Limitations does not bar the claim. The defense, therefore, is overruled, and the claim of James H. Dunn is allowed. The executors are authorized to pay the claims of persons similarly situated.

(2) A question is presented as to the amount of compensation payable to the estate of Arthur J. Ronaghan, one of the executors, for his services rendered in that capacity. Mr. Ronaghan had been the personal attorney of Mr. Hayden, the testator. He drew an instrument dated September 3, 1935, in the form of a letter addressed to Mr. Hayden in which 't was stated that he and the other two persons named as executors and trustees were advised that Mr. Hayden was about to execute his will and intended naming them as executors and trustees. It further stated that " in consideration of your naming us " as fiduciaries and " in view of the fact that the bulk of your fortune is going to charity, we hereby waive and renounce our rights to the usual statutory commissions." The letter closed with a statement that Mr. Hayden was to fix, at the foot of the letter, the sum to be paid to them In the addendum to it, Mr. Hayden named that amount at $100,000 which each executor and trustee " shall be entitled to receive." The exact contents of the instrument and the circumstances surrounding its execution were set forth in my decision in *Matter of Hayden* (172 Misc. 669). That proceeding involved consideration of the validity of the waiver because of the contentions of one of the executors, Edgar A. Doubleday, that the terms of the instrument were not enforcible and that he was entitled to his full statutory commissions as executor. The surrogate in his decisions overruled these contentions.

Mr. Ronaghan served as one of the executors from the date of the issuance of letters testamentary, on January 12, 1937, to his death on October 2, 1939. The period of his services covered, therefore, approximately two years and ten months. In his life-

time he and the other executors and trustees filed their first account in this court. Under the decree which judicially settled it he was allowed the sum of $60,000 on account of the total compensation of $100,000. The executors of his estate now request that the balance of his total compensation be allowed to him. Opposition to the payment of the full amount is made by the Charles Hayden Foundation, the beneficiary of the residuary trust, and the remaindermen of other trusts created by the will.

The surrogate holds that Mr. Ronaghan earned the full amount of the compensation fixed by the testator and that the balance is payable to the executors of the Ronaghan estate. The agreement of September 3, 1935, must be construed and the intention of the parties " must be gathered from all the surrounding circumstances and the writings interpreted according to the purpose which the parties had in mind." (*Matter of Cook*, 244 N. Y. 63, 69.) Under its terms, Mr. Hayden secured the services of the three persons selected as his fiduciaries at a rate of compensation far less than the amount they would have received as commissions under the statute. The estate approximated $54,000,000 and the commissions to each of his executorial capacity alone would have amounted to at least $1,000,000. They, on the other hand, were limited to the designated compensation of $100,000 fixed by the terms of the agreement. The responsibilities assumed by them in the discharge of their duties were burdensome. The administration of the estate presented many complications which must have been contemplated by the parties to the agreement before Mr. Hayden's death. The testator had named three persons to act in the administration of his estate. Under the terms of the agreement it is clear that if one of them died after the assumption of his responsibilities and after the rendition of substantial services, it was intended that he should receive the full amount fixed in the agreement.

The research of counsel and the independent investigation of the surrogate have revealed no authority in New York which bears directly upon the rate of compensation to be paid to an executor who dies during the period of his service, where commissions have been waived and compensation fixed by agreement between himself and his testator, or where a legacy was given in lieu of commissions.

In a somewhat similar situation (*Matter of Sweatman*, 223 Penn. St., 552; 72 A. 895), the right of recovery of the estate of a deceased executor who was given a legacy of $6,000 " in lieu of all commissions," was considered. He died four months after he had qualified. The reasoning and conclusion of the highest court of

that State in its opinion are pertinent and persuasive here. It determined that the deceased executor's estate was entitled to the designated amount of compensation in full. " The testator himself determined the sum that he should receive and. took the risk of his executor's illness or death; the executor by accepting the post took with it the chance that the labor entailed might be greater than he could reasonably anticipate. Did the amount named prove to be too small, we would be powerless to increase it. * * * And when the executor once qualified as executor, he became entitled to some compensation — whether little or much is immaterial; his death did not deprive his estate of his right to what had been earned, and it was in lieu of that compensation that he was given his legacy. It must be presumed * * * that the testator had in mind the possibility that death might reduce the number of his executors and that he considered such a contingency when he fixed the compensation to be paid to each of them." The industry and fidelity of Mr. Ronaghan, in the service as executor, is strikingly observable here. By his own suggestion, made in the lifetime of the testator and by his faithful service after the death of Mr Hayden, the charitable residuary legatee has received a benefit in the saving of commissions alone of $2,200,000. The greater part of the work of the administration of the estate had been completed and a sum consisting of many millions of dollars had been turned over in his lifetime by the executors to the trustees. If there is need of an alternative basis for the award of full compensation to him, by using *quantum meruit* as the test, Mr. Ronaghan fully earned the sum of $100,000. Again, the rule laid down by the authorities, that the surrogate in his discretion may allow to the estate of the deceased executor or trustee compensation for his services not exceeding the statutory commissions may be applied here by analogy. Under that rule, I would, in my discretion, allow the full amount of the designated compensation to Mr. Ronaghan's estate. (*Matter of Barker*, 230 N. Y. 364; *Matter of Bushe*, 227 id. 85.)

The Federal authorities cited by counsel for the foundation, dealing with the treatment of a legacy in lieu of commissions and specifically as to whether it is exempt or subject to income tax, have no application here.

The decree may contain a provision directing payment of the balance of $40,000 to the executors of the estate of Arthur J. Ronaghan.

(Other directions included in the original decision of the surrogate omitted because of their subordinate importance.)

Submit decree on notice settling the account accordingly.