EDWARD J. QUINTAL and Others, Trustees in Bankruptcy of CONSOLIDATED FACTORS CORPORATION, Bankrupt, Plaintiffs, *v.* FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant.

Supreme Court, New York County, February 8, 1932.

*Gleason, McLanahan, Merritt & Ingraham* [*Walter Gordon Merritt. Charles F. Bailey* and *Donald K. Miller* of counsel], for the plaintiffs.

*Thomas E. White* [*Joseph F. Murray* of counsel], for the defendant.

FRANKENTHALER, J. This is an action by the trustees in bankruptcy of Consolidated Factors Corporation (formerly known as

Pelz-Greenstein Co., Inc.) to recover moneys paid to the defendant under an alleged *ultra vires* indemnity agreement.

The adjudication in bankruptcy took place on June 13, 1930. For some years prior thereto Consolidated Factors Corporation, hereinafter referred to as the bankrupt, had been engaged in business as a commercial factor. Among the firms which it financed was Madison Distributing Company. Merchandise purchased by the latter for sale would be consigned to the bankrupt as security for advances made by the latter. Upon sale of the merchandise and delivery of the same to customers of Madison Distributing Company the accounts receivable resulting from the sales would replace the merchandise as security for the loans. On March 1, 1929, the Farish Company obtained judgment against the Madison Company in the sum of $10,106.45. In order to induce the defendant to furnish an appeal bond to stay execution on the judgment pending the determination of an appeal taken by the Madison Company from the judgment, the bankrupt executed an agreement that it would indemnify the defendant against all liability, loss, damages and expenses which the latter might sustain or incur by reason of its writing the appeal bond. On April 12, 1929, the defendant furnished the bond. In March, 1930, the judgment was affirmed on appeal, and an action was thereupon commenced by the Farish Company against this defendant upon the appeal bond. Judgment by default was entered and the defendant paid the Farish Company the amount of the judgment. In response to the defendant's demand upon the bankrupt for reimbursement in accordance with the terms of the indemnity agreement the latter paid the defendant the amount which it had been obliged to pay the Farish Company. About the end of October, 1930, the present action was commenced by the trustees in bankruptcy, elected in July, 1930, to recover the sum thus paid to the defendant, the complaint alleging that the payment was beyond the corporate powers of the bankrupt and, therefore, void and ineffective as a corporate act of the bankrupt.

The original certificate of incorporation of the bankrupt admittedly contained no provision authorizing it to guarantee obligations of others, or to execute indemnity agreements in order to enable others to obtain appeal bonds. After the execution of the indemnity agreement and before the payment made by the bankrupt to the defendant the certificate was amended and the purposes and powers of the corporation enlarged. There is, however, nothing in the amendment which would authorize or empower the bankrupt to execute an indemnity agreement of the character here involved.

Nor did the bankrupt have a financial interest to serve in writing the indemnity agreement and making payment pursuant thereto.

At the time the agreement was entered into the Madison Company was hopelessly insolvent and in the process of liquidation. It owed the bankrupt $557,156.73. The apparent debit balance was only $473,355.84, but this reflected credits of $59,688.69 and $24,112.20 given to the Madison Company for purported sales made by the latter and purported accounts receivable resulting therefrom. Actually the sales never took place. The total collateral held by the bankrupt as security for the repayment of the debit balance of $557,156.73 was not in excess of $150,000. Other debts of the Madison Company including the Farish judgment, aggregated at least $21,469.35. The assets of the Madison Company which had not been pledged with the bankrupt were practically worthless. Under these circumstances the bankrupt could derive no advantage or benefit from executing an indemnity agreement in order to enable the Madison Company to obtain an appeal bond which would stay execution of the judgment against it. The Madison Company, being hopelessly insolvent and in liquidation, could no longer be of commercial advantage to the bankrupt. The reversal of the Farish judgment upon appeal could not benefit the bankrupt by reducing *pro tanto* the claims of unsecured creditors, of whom it was one, since the negligible assets of the Madison Company would be entirely depleted by the expenses of the appeal and administration expenses in bankruptcy and there would be nothing left to pay the unsecured claims. In fact, a reversal of the Farish judgment might well turn out to be to the detriment rather than to the benefit of the bankrupt in that one of the issues in the Farish action was whether the sale was made by the Farish Company to the Madison Company or to the bankrupt. A reversal might ultimately lead to a judgment in favor of the Farish Company and against the bankrupt.

That the taking of the appeal and the stay of execution would be of no benefit to the bankrupt or even to the Madison Company, which was doomed to extinction regardless of the results of the appeal, was recognized by the officers of the latter. They advised the bankrupt that there was nothing to be gained by taking the appeal but Pelz, secretary-treasurer of the bankrupt, insisted upon the appeal being taken because he " could not afford to have any trouble with the Madison Distributing Company just now." Evidently the trouble he referred to was a possible examination of the books of account of the Madison Company which would reveal the fraudulent entries of fictitious sales and fictitious accounts receivable. These entries had been the result of collusion between Pelz and the officers of the Madison Company. A stay of the Farish judgment pending appeal would stave off the day when

the wrongdoing of Pelz and other officers of the bankrupt would be brought to light.

It is apparent from the foregoing that the execution of the indemnity agreement was an *ultra vires* act as far as the bankrupt was concerned. Were the surety company suing the bankrupt for reimbursement under the indemnity agreement it would be clear that the defense of *ultra vires* would defeat the action. The rule that a corporation is estopped from asserting the defense of *ultra vires* in an action upon a contract performed by the other party thereto appears to be confined, at least in this State, to cases where the corporation received and retained the benefits of the other party's performance. In *Morris* v. *Wiener Co.* (65 Misc. 18) (App. Term, 1st Dept.) the action was brought upon an instrument executed by the defendant corporation which guaranteed the payment of rent under a lease to a third party. Though the plaintiff had performed his part of the agreement pursuant to which the guaranty had been furnished and had suffered a detriment thereby, the corporation was held to be free to plead the defense of *ultra vires*. Mr. Justice LEHMAN, now Judge LEHMAN of the Court of Appeals, writing for the court, said (p. 19): "The doctrine of estoppel in *ultra vires* is based upon the rule that, where the contract has been executed, the corporation is presumed to have received the benefit and should not be permitted to escape the burden; but, where the benefit is alleged and proven to have been rendered to another and at the request of the party benefited, the rule does not apply." Examination of the authorities in this jurisdiction has disclosed none holding that a corporation is estopped to assert the defense of *ultra vires* in an action on an *ultra vires* contract except where it actually received some benefit from the other party's performance. Wherever the corporation has been held estopped the opinion of the court has emphasized the receipt of benefits by the corporation. Thus in the recent case of *American Surety Co.* v. *Philippine National Bank* (245 N. Y. 116) the Court of Appeals, in reversing a judgment obtained by the defendant, emphasized the fact that the latter had received a direct financial benefit from the execution of the indemnity agreement and pointed out that in no jurisdiction was a party permitted to retain what it had received under an *ultra vires* contract and at the same time refuse to perform its part of the contract. In *Gause* v. *Commonwealth Trust Co.* (196 N. Y. 134) the defense of *ultra vires* was upheld because, to quote from the opinion (p. 157): "The plaintiff has never given to the defendant any concrete thing by virtue of the agreement." The fact that the plaintiff had suffered a detriment in the performance of his part of the agreement, in that he (p. 157)

" refrained from selling his bonds and stock and held himself in readiness to deliver the same to the defendant," was not deemed sufficient to overcome the defense of *ultra vires*. In *American Surety Co.* v. *Philippine Nat. Bank* (*supra*) the Court of Appeals distinguished the *Gause Case* (*supra*) in the following language (p. 132): " *Gause* v. *Commonwealth Trust Co.* (196 N. Y. 134), much relied upon by the respondent, related to an agreement from which the trust company received no benefit, as was stated in the opinion." To the same effect are *Bath Gas Light Co.* v. *Claffy* (151 N. Y. 24, 31); *Appleton* v. *Citizens' Central National Bank* (190 id. 417; L. R. A. 1917A, 848).

A distinction must, however, be drawn between a case where a corporation sets up the claim of *ultra vires* as a defense and one where it relies upon that claim to support an action by it as plaintiff to recover payments already made by it in complete performance of a contract fully performed by the other party thereto. In the first situation the contract is executory as far as the corporation is concerned and the doctrine of *ultra vires* is being used as a shield, while in the latter situation the contract has been fully executed and the claim of *ultra vires* is employed as a sword.

In Thompson on Corporations (3d ed.) the rule is stated as follows (Vol. 4, § 2845): " Under any view of the doctrine of *ultra vires*, where a contract with a corporation, beyond its granted powers, is fully executed by both parties, neither of them can assert its invalidity as a ground of relief against it. In cases of this character the maxim *in pari delicto, potior est conditio defendentis*, applies in its full force and the courts will not aid either of the parties in setting aside the contract, so as to permit a recovery of amounts lost through such contract. The defense of *ultra vires* applies in strictness only to executory and not to executed contracts. In such cases ' the law will not interfere, at the instance of either party, to undo that which it was originally unlawful to do, and to the doing of which, so long as the contract to that end remained executory, neither party could have coerced the other.' "

In Fletcher on Corporations (Vol. 3, p. 2631) the following statement of the doctrine appears: " In considering the contracts called executed contracts, it is necessary always to keep in mind that executed contracts are those which have been fully performed on both sides, although the courts sometimes erroneously refer to contracts executed on one side only as executed contracts. When an *ultra vires* contract with a corporation has been fully performed on both sides, neither party can maintain an action to set aside the transaction or to recover what has been parted with. In other words, neither a court of law nor a court of equity will interfere in

such a case to deprive either the corporation or the other party of money or property acquired under the contract."

Similar expressions of the rule are to be found in the other leading texts and articles on the subject. (7 R. C. L. 674; 14 A. C. J. 319; L. R. A. 1917A, 759; 29 Am. & Eng. Ency. of Law [2d ed.[, 60.) In *Parish* v. *Wheeler* (22 N. Y. 494) the Court of Appeals declared that (p. 508) " the executed dealings of corporations must be allowed to stand, for and against both the parties, when the plainest rules of good faith so require."

The rule of the Federal courts in regard to *ultra vires* contracts is stricter than that prevailing in the courts of this State. The Federal rule is that all contracts which are *ultra vires* are void, while our law is that those which are not *mala in se* or *mala prohibita* are merely voidable and not void. (*Dyer* v. *Broadway Central Bank*, 252 N. Y. 430, 435; *Appleton* v. *Citizens' Central Nat. Bank, supra; Bath Gas Light Co.* v. *Claffy*, 151 N. Y. 24, 31.) However, even in the Federal courts, where *ultra vires* contracts are held void, the rule is established that fully executed contracts will not be disturbed. In *Thomas* v. *Railroad Co.* (101 U. S. 71) the United States Supreme Court said (pp. 85, 86): " There can be no question that, in many instances, where an invalid contract, which the party to it might have avoided or refused to perform, has been fully performed on both sides, whereby money has been paid or property changed hands, the courts have refused to sustain an action for the recovery of the property or the money so transferred."

In *St. Louis, Vandalia & Terre Haute Railroad Co.* v. *Terre Haute & Indianapolis Railroad Co.* (145 U. S. 393) the same court used the following language (p. 407): " When the parties are *in pari delicto*, and the contract has been fully executed on the part of the plaintiff, by the conveyance of property, or by the payment of money, and has not been repudiated by the defendant, it is now equally well settled that neither a court of law nor a court of equity will assist the plaintiff to recover back the property conveyed or money paid under the contract."

The rule that *ultra vires* contracts which have been fully executed on both sides will not be disturbed by the courts appears to rest, in part at least, on the practical desirability that there should be a finality about fully executed transactions. A contrary rule would leave parties to completely performed contracts in a state of uncertainty as to the possibility of their being undone until the time for commencing an action for such relief had expired.

The plaintiffs, while recognizing the foregoing rule regarding fully executed *ultra vires* contracts, maintain that it does not apply where the party seeking to recover an *ultra vires* payment has received no

benefits from the performance of the *ultra vires* contract. No decision making this distinction has, however, been called to my attention and my examination of the authorities has revealed none.

In the instant case the contract was fully executed by the bankrupt and by the defendant and it follows that the plaintiffs may not recover the payment voluntarily made by the bankrupt. A verdict is directed in favor of the defendant in accordance with the stipulation entered into at the outset of the trial. The motions to strike out, upon which decision was reserved, are denied with appropriate exceptions, as is plaintiffs' motion for the direction of a verdict in their favor.