## Pennsylvania Baptist Convention *v.* Regular Baptist Church of Smethport, Appellant.

Argued April 22, 1954. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*William P. McVay,* with him *Robert B. Apple, James F. McVay* and *McVay & McVay,* for appellants.

*William D. Gallup,* with him *E. G. Potter, Robert J. Healy, Romain C. Hassrick* and *Gallup, Potter & Gallup,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, June 4, 1954:

The plaintiff and the defendant in this case are both religious organizations, but the subject of the lawsuit is a very mundane one: real estate.

On July 18, 1940, the defendant, Regular Baptist Church of Smethport, turned over to the plaintiff, The Pennsylvania Baptist Convention, a deed for the property used as a parsonage for the Smethport Church. On the following day the Convention deeded back the same property with this reversionary clause in the deed: "It being understood and agreed that in the event the grantee its successors or assigns ceases to function as a Baptist Church in accordance with the definition of cooperative church, as prescribed by the official action of the Pennsylvania Baptist Convention then title in the premises shall revert to the Pennsylvania Baptist Convention."

Both deeds were recorded on October 28, 1940.

About ten years later, the defendant Church severed all relationship with the Pennsylvania Convention, whereupon the Convention demanded a surrender of

the parsonage in accordance with the reversionary clause in the deed of July 19, 1940. The defendant Church refused to give up the parsonage, and an action in ejectment followed. At the ensuing trial the plaintiff proved the making and delivery of both deeds, the failure of the defendant to remain a "cooperative church," and its refusal to vacate the premises.

The defendant contended that its deed to the plaintiff on July 18, 1940 had not been properly authorized by a majority of its lay members and that the title to the property in question had not left the Church; therefore, the plaintiff's deed, with its reversionary clause, was a nullity and of no effect.

The jury returned a verdict for the defendant. On plaintiff's motion, the court entered a judgment notwithstanding the verdict, and this appeal followed.

There can be no question that the deed of July 18, 1940, from the Church to the Convention was valid on its face and thus conveyed a prima facie title. " 'When the common seal of a corporation appears to be affixed to an instrument, and the signatures of the proper officers are proved, the courts are to presume that the officers did not exceed their authority, and the seal itself is prima facie evidence that it was affixed by proper authority.' " (*Little Saw Mill Val. Turnpike etc. v. Federal St. and P. V. Pas. Ry. Co.*, 194 Pa. 144, 45 A. 66.)

In his Opinion entering judgment n.o.v., the learned Judge in the court below properly stated: "The testimony of the plaintiff was not denied or contradicted; the plaintiff's testimony was documentary or was admissions by the defendants as to averments in the pleadings. The plaintiff established its case . . . The burden of producing testimony to substantiate the defendants' claim that the deed of July 18, 1940 was void was on the Church. The conclusion is inescapable

that there was no testimony relative to illegality of that deed and therefore no testimony on which the jury could base a finding that the deed from the defendant Church to the Convention was void.".

The defendant Church specifically contends that since control of the assets of the Church by law and charter lies in the hands of a majority of its lay members, proof that such a majority did not approve of the conveyance would render it void. Catherine Monday, the Church clerk and custodian of the minutes testified that the church had 59 members in 1940, that the minutes showed a special meeting on April 21, 1940, and that although the minutes did not indicate the number of persons present, a quorum of 10 must have been present since that minimum was required to transact business. In the absence of evidence to the contrary it must be assumed that adequate authority, that is, approval of the transaction by a majority of the lay members was duly exercised in the conferring of the property to the Convention. Although the minutes did not refer to the transfer of the property from the Church to the Convention, it cannot be questioned that this subject was considered. Dan Bloomster, member of the Church, testified: "Q. Do you recall whether or not that was the meeting [April 21, 1940] at which there was a discussion as to the clause to be put in a deed from the Church to the Pennsylvania Baptist Convention? A. Came in right at that discussion of putting the clause into the Convention. Q. You remember that meeting and that was one of the things that took place at that meeting? A. Yes."

The Minutes make a very specific reference to the conveyance of the property from the Convention to the Church. Since, on April 21, 1940, the title to the parsonage was in the Church, it logically follows that any discussion about a condition in the title of the prop-

erty *from the Convention to the Church* inescapably establishes that the assembly had approved of the transfer of the property *from the Church to the Convention.* One does not consider a trip back *from* the sea unless he has already made arrangements for a trip *to* the sea. The minutes of April 21, 1940, carry the following item: "A Special Business Meeting of the Church was called after Evening Services on April 21, 1940.

"Prayer by Rev. Taylor.

"Motion made by Mrs. Spanogle, seconded by Eva Johnson and carried, that in consideration of payment of $1000 from State Convention that a clause be inserted in the deed to the parsonage property so that it will revert to the State Convention if this Church should cease to (exist) cooperate with convention, with the understanding that we will receive no state aid for at least 10 years."

On the margin of the page opposite this entry there appeared the direction: "See page 58 for exact wording of clause to be inserted in deed." On page 58 the following appeared: "In the event the grantee, its successors, or assigns ceases to function as a Baptist Church, in accordance with the definition of cooperative Church, as prescribed by the official action of the Pennsylvania Baptist Convention, then title in the premises shall revert to the Pennsylvania Baptist Convention."

As further evidence with regard to the sequence of events it is to be noted that since the deed of July 18, 1940, contains no reversionary clause, evidence as to the defendant's corporate action on April 21, 1940, could only possibly relate to the deed of July 19, 1940. Furthermore, in a congregation of this small size it would be contrary to every human observation to assume that in a period of ten years, members of the church would not have learned the exact nature of

the dealings with the Convention when those dealings had to do with the very home of their pastor. If, in truth, the majority of the members had not approved of the transfer of the property to the Convention, that fact would have risen like a pillar of fire to challenge the attention and excite the determination of the congregation to demand a rectification of the records.

Nothing can be more indispensable to a well ordered society and a smoothly functioning civilization than the integrity of its records involving property. If deeds could be invalidated and property rights overturned with the ease argued for here by the defendants, the resulting chaos in organized society would surpass that which follows an earthquake or any other catastrophe which destroys the archives of the people.

The defendants here completely failed to demonstrate that the records were not exactly what they purported to be. The judgment of the lower court is, therefore, affirmed.