[641 NYS2d 680]

CONGREGATION YETEV LEV D'SATMAR, INC., et al., Respondents, v 26 ADAR N.B. CORP. et al., Appellants, et al., Defendant. (And a Third-Party Action.)

Second Department, April 22, 1996

### APPEARANCES OF COUNSEL

*Morton Grossman,* Brooklyn; *Dollinger, Gonski, Grossman, Permut & Hirschhorn,* Carle Place *(Michael Permut* and *Mindy Wallach* of counsel), and *Noel W. Hauser & Associates,* New York City, for 26 Adar N.B. Corp. and others, appellants. (One brief filed.)

*Dreyer & Traub,* New York City *(Eugene Mittelman* and *James Schwartzman* of counsel), for Bay Ridge Federal Savings and Loan Association, appellant.

*Saretsky, Katz & Dranoff, P. C.,* New York City *(Julian S. Greenspun, Alan G. Katz, Marsha Weinstein* and *Darren T. Kaplan* of counsel), for respondents.

*Herrick, Feinstein,* New York City *(Stephen M. Rathkopf, Arthur G. Jakoby* and *Raymond N. Hannigan* of counsel), for New York State Land Title Association, *amicus curiae.*

### OPINION OF THE COURT

FRIEDMANN, J.

On this appeal, we are asked to consider whether a religious corporation may set aside several court-authorized transfers and mortgages of religious property due to purported deviations from statutory requirements and from the religious corporation's proper internal procedures when the claimed deviations were not disclosed until many years after the various transactions had been completed and when the invalidation of those transactions would seriously prejudice subsequent bona fide purchasers and mortgagees.

By a verified petition dated May 10, 1978, the third-party defendants Leopold Lefkowitz and Solomon Sender, the Presi-

dent and Secretary, respectively, of the plaintiff Congregation Yetev Lev D'Satmar, Inc. (hereinafter Yetev Lev), commenced a proceeding in the Supreme Court, Kings County, for leave to convey the premises located at 533-539 Bedford Avenue, Brooklyn, New York, to the defendant Congregation Beth Joel (hereinafter Beth Joel) for $100,000 ($35,000 in cash and $65,000 subject to an existing mortgage held by the Dime Savings Bank of Williamsburg). Attached to the petition were (1) the minutes of a special meeting of the membership of Yetev Lev that had been held on April 18, 1978, at which a resolution authorizing the sale had been unanimously passed, (2) a copy of the resolution adopted at a special meeting of Yetev Lev's three-member Board of Trustees which also approved the sale, and (3) a legal description of the property which made it clear that the conveyed premises also included 540-541 Bedford Avenue. The buildings on the property include a synagogue and a home that was built for Yetev Lev's Grand Rabbi Joel Teitelbaum and his wife Feige.

On the basis of the foregoing documents, the Supreme Court, Kings County (Pino, J.), issued an order, dated June 6, 1978, permitting the conveyance. The order expressly incorporated by reference a legal description of the property, making it clear that 540-541 Bedford Avenue (the synagogue) was part of the property being conveyed.

By a deed recorded in June of 1978, the five parcels located at 533-541 Bedford Avenue were conveyed by Yetev Lev to Beth Joel. Subsequently, the following legend was inscribed on the front of the synagogue: "House of Worship-House of Joel; To the Memory of the Satmar Rabbi—Provided by Rebbitzin Alte Feige Teitelbaum." Yetev Lev's financial statement for 1978 notes the sale of the property, and the property is not listed on the "Schedule of Real Property and Improvements" contained in Yetev Lev's 1978 and 1979 financial statements.

In August of 1978, following the receipt of court approval, Beth Joel used the property to obtain a building mortgage loan from Manufacturers Hanover Trust Company in the principal amount of $1,000,000, to be used in connection with the establishment of a new community in the Town of Monroe, Orange County.

In October 1980, Beth Joel commenced a proceeding in the Supreme Court, Kings County, for leave to sell the property to the defendant Beth Feige, Inc. (hereinafter Beth Feige), another religious corporation. By an order dated November 12, 1980, the Supreme Court (Jordan J.) authorized the convey-

ance. In December 1989, after obtaining an order from the Supreme Court, Kings County (Shaw, J.), Beth Feige procured a mortgage loan from the defendant Bay Ridge Federal Savings and Loan Association in the principal sum of $1,125,000, secured by the property that is the subject of this appeal.

In February 1990, Beth Feige petitioned the court for permission to sell the property to the defendant 26 Adar N.B. Corp. On March 21, 1990, the application was granted by the Supreme Court, Kings County (Rappaport, J.).

In the meantime, a schism had divided the worshipers at the synagogue into factions. In April 1990, 26 Adar N.B. Corp. and its owner, the defendant Nachman Brach, installed metal gates over the entrance to the synagogue, apparently in an effort to keep out the members of Yetev Lev.

In May of 1990, the plaintiffs commenced this action, alleging that the 1978 transfer of the property and all subsequent transfers and mortgages of the property were invalid because they had been procured by numerous false and fraudulent representations which had misled the courts into approving them. For example, the plaintiffs averred that the 1978 petition falsely represented that the initial sale of the property to Beth Joel had been authorized by Yetev Lev's Board of Trustees and general membership, that the trustees and membership had deemed it beneficial to sell the property, and that the fair market value of the property was $100,000. The plaintiffs also averred in affidavits from various officers and members of Yetev Lev that, in fact, Yetev Lev had *six* trustees in 1978, despite its representation in the 1978 petition that it had only three trustees. Thus, the plaintiff argues that, since the property could have been alienated *only* with the approval of two thirds of its trustees, the sale to Beth Joel, which had been approved by only *two* trustees (i.e., Lefkowitz and Sender) was invalid. In addition, the plaintiffs averred that no proposal to sell the property had ever been presented to the membership of Yetev Lev, despite the minutes of the special membership meeting that was held on April 18, 1978, to the contrary. (Sender no longer remembers signing the minutes of that meeting and/or insists that he signed them without reading them.) The plaintiffs further averred that the synagogue could not have been conveyed in 1978 because its address, 541 Bedford Avenue, does not appear on the petition. Finally, the plaintiffs averred that all subsequent transfers and mortgages of the property were tainted by similar irregularities.

The Supreme Court granted the plaintiffs summary judgment and declared that Yetev Lev is the owner of the property. We now reverse and dismiss the complaint.

As a threshold matter, we note that, when there is a discrepancy between the street address and the legal description of a piece of real property, the legal description controls *(see,* 1A Warren's Weed, New York Real Property, Description, §§ 11.01-11.02 [4th ed]; *see also,* N-PCL 511 [a] [4]).

The documentary evidence establishes beyond peradventure that the various sales and mortgages of 533-541 Bedford Avenue, Brooklyn, that are challenged on this appeal, were effectively brought about by binding resolutions of the Yetev Lev's congregation and Board of Trustees, as well as by properly obtained court orders *(see,* Religious Corporations Law § 12 [1], [8]; N-PCL 511). The plaintiff may not now, many years after these transactions were consummated, render them void by submitting self-serving affidavits (in defiance of several facially valid petitions, supporting documentation, court orders, and public records of the property's ownership) contending, *inter alia,* that these transactions were never properly authorized by the statutorily mandated number of trustees and congregants *(see, e.g., Pennsylvania Baptist Convention v Regular Baptist Church,* 377 Pa 631, 636, 105 A2d 296, 298).

Not-For-Profit Corporation Law § 203, which is applicable to religious corporations pursuant to N-PCL 103 and 201 and Religious Corporations Law § 2-b *(see, e.g., Rector of St. Bartholomew's Church v Committee to Preserve St. Bartholomew's Church,* 84 AD2d 309; *Matter of Lueken,* 97 Misc 2d 201; *see also,* Business Corporation Law § 203), provides, *inter alia,* that a religious corporation like Yetev Lev cannot invalidate an ultra vires, but otherwise lawful, transfer of property if the transfer was duly approved or authorized by a Judge. Rather, its remedy is to sue its misbehaving corporate officers. We note that the two trustees who were responsible for the challenged transfers, far from being sued for their fraudulent behavior by Yetev Lev, apparently remain, as before, principal officers of Yetev Lev.

The defense of ultra vires cannot be wielded as a sword by a plaintiff to invalidate a contract that has already been fully performed by both parties *(see, e.g., Quintal v Fidelity & Deposit Co.,* 142 Misc 657, *affd* 238 App Div 820). As the *Quintal* court wrote, "The rule that *ultra vires* contracts which have been fully executed on both sides will not be disturbed by the courts appears to rest, in part at least, on the practical desir-

ability that there should be a finality about fully executed transactions. A contrary rule would leave parties to completely performed contracts in a state of uncertainty as to the possibility of their being undone" at some remote future date (*Quintal v Fidelity & Deposit Co., supra,* at 662). On an even more fundamental level, as the Supreme Court of Pennsylvania observed in the case of *Pennsylvania Baptist Convention v Regular Baptist Church* (377 Pa, *supra,* at 635, 105 A2d, *supra,* at 298), "Nothing can be more indispensable to a well ordered society and a smoothly functioning civilization than the integrity of its records involving property. If deeds could be invalidated and property rights overturned with the ease argued for here by the [plaintiff], the resulting chaos in organized society would surpass that which follows an earthquake or any other catastrophe which destroys the archives of the people."

Indeed, were the plaintiffs in this case to prevail, it would render unstable the title to any parcel of real property in New York State that had ever been previously owned by a religious or not-for-profit corporation, even if its conveyance had been accomplished pursuant to a court order. In addition, religious and not-for-profit corporations would be severely handicapped in their efforts to mortgage or sell their land, and no prudent title insurance company would undertake to insure any real estate transaction involving property that had once been owned by a religious or not-for-profit corporation. In short, should the plaintiffs' arguments succeed, the adverse impact upon the free alienation and mortgaging of any other comparable property in New York State would be incalculable.

In addition, the plaintiffs are estopped from denying that they originally sold the property in 1978 *(see, e.g., Bunge Corp. v Manufacturers Hanover Trust Co.,* 31 NY2d 223; *Meyerson v Lawyers Tit. Ins. Corp.,* 39 AD2d 190, 194, *affd* 33 NY2d 704; *Gleason v Tompkins,* 84 Misc 2d 174; *Matter of Blank v Board of Higher Educ.,* 51 Misc 2d 724, 730; *see also, Marrin v Monroe,* 222 App Div 251, *affd* 251 NY 530; *Matter of Mavromatis,* 70 Misc 2d 55). Moreover, by waiting approximately 12 years to challenge the 1978 transfer—about which it knew or had every reason to know *(see, e.g., Perkins v Rich,* 11 Mass App Ct 317, 415 NE2d 895, *affd* 385 Mass 1001, 429 NE2d 1135; *cf., Kraker v Roll,* 100 AD2d 424)—the plaintiffs either ratified the conveyance *(see, Holm v C.M.P. Sheet Metal,* 89 AD2d 229, 232-233; *see also, Perkins v Rich, supra),* or they are barred by the doctrine of laches from contesting it at this late date *(see, e.g., Goodwin v First Baptist Church,* 225 Ga 448, 169 SE2d 334;

*Puckett v Jessee,* 195 Va 919, 81 SE2d 425), particularly in light of the palpable detriment to several innocent, bona fide purchasers and incumbrancers for value *(see,* Real Property Law § 266; *Louisville, New Albany & Chicago Ry. Co. v Louisville Trust Co.,* 174 US 552; *Anderson v Blood,* 152 NY 285; *cf., United Matura Realty v Reade Indus.,* 155 AD2d 660; *Greenpoint Sav. Bank v Pennolino,* 136 AD2d 600). Contrary to the plaintiffs' contentions, Yetev Lev did not remain an owner in possession of the property merely because, with the permission of the subsequent owners, its congregants continued to attend religious services at the synagogue after the property's conveyance *(see, e.g., Congregation Yetev Lev D'Satmar v 26 Adar N.B. Corp.,* 192 AD2d 501) or because it helped Beth Joel, and later Beth Feige, defray certain routine expenses.

In view of the foregoing determination, we decline to address the remaining arguments raised by the parties on this appeal.

BRACKEN, J. P., ROSENBLATT and MILLER, JJ., concur.

Ordered that the appeal from the order dated January 24, 1994 is dismissed since that order was superseded by the order dated April 22, 1994, made upon reargument; and it is further,

Ordered that the order dated April 22, 1994 is reversed, insofar as appealed from, on the law, the order dated January 24, 1994 is vacated, the plaintiffs' cross motion for partial summary judgment is denied, the appellants' motions for summary judgment dismissing the complaint are granted, and the complaint is dismissed; and it is further,

Ordered that the matter is remitted to the Supreme Court, Kings County, for the entry of an appropriate judgment pursuant to RPAPL 1521; and it is further,

Ordered that the appellants, appearing separately and filing separate briefs, are awarded one bill of costs.