S. Samuel Di Falco, S.
The son and daughter of the decedent bring the present proceeding under section 206-a of the Surrogate’s Court Act, to compel the temporary administrator to deliver to them securities in the possession of the fiduciary which are allegedly owned by them. Petitioner Hamilton Allen, Jr., claims ownership of bonds of New Jersey Highway Authority in the face amount of $17,000, New York State Housing bonds in the face amount of $17,000 and $952.45 cash. Petitioner Carol Jane Wheeler claims ownership of bonds of New Jersey Highway Authority in the face amount of $16,000, New York State Housing bonds in the face amount of $17,000 and $518.93 cash. Thus the petitioners claim New York State bonds in the total sum of $34,000 and New Jersey bonds in the total amount of $33,000. It is conceded that the temporary administrator took possession of New York State Housing bonds only in the amount of $30,000 and New Jersey Highway Authority bonds only totalling $25,000. Petitioners’ counsel conceded that petitioners probably would not be able to trace securities except those just mentioned in the amounts of $30,000 and $25,000, respectively, and in the course of the hearing there was no evidence as to the disposition of the other securities claimed by petitioners. After the initiation of this proceeding, the will Avas admitted to probate and letters testamentary were issued. The executor filed an answer claiming OAvnership of the assets by the decedent at the time of his death, and raising the defense *876 of laches and the Statute of Limitations. One of the legatees urges similar defenses.
All of the securities involved in this proceeding were derived from brokerage accounts which the decedent originally established for his children. The brokerage accounts were opened by the decedent with Bear, Stearns & Co. in 1937, at which time both of the children were minors. There was a change in the family name which is of no significance here and which we may ignore, so that we may say that the brokerage accounts were originally opened in the name, ‘ ‘ Hamilton Allen for Hamilton Allen Jr.” and “Hamilton Allen for Carol Jane Allen”. As each child attained majority, the decedent’s name was removed from the account, and from that time forward the account was in the sole name of that child.
There is no documentary proof that the securities first placed in the accounts in 1937 were gifts to the children, but the decedent’s former wife testified that the decedent had made gifts to the children in the late 1930s for the purpose of ‘ ‘ avoiding eventual inheritance tax and also income tax at that time and giving them some security for the future.” The decedent subsequently told her that he had set up accounts for them and that he had put securities in the accounts. He told her the precise securities placed in the accounts but she has no present recollection of the securities. There is clear documentary proof of the gift of securities in the years 1940 to 1948, consisting of shares of stock of New York Shipbuilding Corporation, Greenfield Tap & Die Corporation, West Virginia Coal & Coke Corporation, Sweets Company of America, Electric Boat Company, and American Hawaiian Steamship Company. These securities were sold, most of them in the latter part of 1948. Other securities were purchased with the proceeds of sales. There were subsequent purchases and sales, securities were delivered to the decedent and redelivered to the account, cash was delivered to the decedent and deposited to his personal bank account and in September, 1949 the decedent made a loan to the account. Despite all of the transactions, deliveries and redeposits, there is reasonable relationship between the values of the accounts in 1948 and in the final transactions. All of the New Jersey bonds were purchased in August, 1953 with credits that had been created by sales of securities during the prior month or so. They were delivered to the decedent the day after they were purchased. The New York bonds were purchased in February, 1954, largely with the proceeds of other securities sold at the same time. They were delivered to the decedent on the same or the following day. The decedent took *877 the bonds and placed them in his safe-deposit box. Some of them were temporary certificates which the decedent later returned to the brokers but placed them in his own account. When they were exchanged for permanent certificates, the decedent received them.
There can be no doubt on this record that the decedent intended to make gifts of securities to his children, and that he took every conceivable step to make it clear upon the record that the children were the legal owners of the securities. The testimony of the decedent’s former wife, the decedent’s own letters to the. person who was employed by the brokers and also by the decedent personally, and the books of account themselves, make it clear that the decedent was making gifts of securities to his wife and children and that he wished them recorded as gifts in his business records and accounts. After each child attained the age of 21 and became the sole owner of the account on the records of the brokerage firm, the child gave the decedent power of attorney to act for the child in relation to the brokerage account. Thereafter, the decedent managed the accounts by virtue of the power of attorney from the registered owner of the account.
The fiduciaries and a legatee resist on the ground that the gifts were never completed because the decedent never relinquished dominion and control over the property. The legatee concedes in her brief, as indeed it must be conceded upon this record, that at one time the decedent did intend to make gifts to his children. The respondents contend, however, that during the minority of the children, the decedent retained full dominion and control over the accounts, that after the children reached majority, he continued to exercise full dominion and control over the accounts and the securities just as if he were the full owner, and that he took back the securities before a gift had been consummated.
There is no doubt that no one except the decedent gave any instructions for the purchase and sale of securities. The children at no time interfered with the operation of the accounts. It is also clear that the brokerage firm treated the children as the owners of the accounts at all times. When the children attained majority, they gave to the brokers letters in almost identical text stating that the account had been transferred to the sole name of the child, and that each approved and ratified all prior transactions in the account. The form of the letters indicates that they were not simply the voluntary and spontaneous expressions of the petitioners but were for the protection of the brokers. Statements of account were regularly sent *878 to the children after they attained majority. They were notified of the amounts to be included in their income tax returns, and the required payments of tax were made by them or on their behalf. After they had reached their majority, the decedent could operate the account only through a formal power of attorney. It is clear that the brokers recognized the petitioners as owners of the account and the decedent as their attorney in fact.
The fact that the decedent gave all instructions for the operation of the accounts and that the children never once interfered with his operations is not incompatible with a vesting of full and complete ownership of the securities in the children. As the court said in Matter of Brady (228 App. Div. 56, 59-60, affd. 254 N. Y. 590): “It is not uncommon for a donee to intrust the donor with possession of the thing given, particularly between child and father or wife and husband. * # * It is not necessary that the donee should retain the property in his possession after delivery to him. The donor may retain possession of it if he does so as agent of the donee for safekeeping.” In the present case the donor did not retain personal possession of the securities which he gave to his children. He placed them in accounts which plainly indicated the children’s ownership. During the infancy of his children he retained powers of management, but the existence of powers of trust over an infant’s property does not prevent the vesting of absolute title in the infant. (Cf. Matter of Kellogg, 187 N. Y. 355; Matter of Babbage, 201 Misc. 750, 753.)
As soon as the legal disability was removed, each petitioner was made sole and complete owner of the account. The decedent accepted powers of attorney which were revocable at the pleasure of the principals. Both decedent and petitioners recognized the revocability of the agency. The decedent’s former wife had suggested to the decedent, and later, to her children, that the powers of attorney be revoked. The decedent “ did not approve and he stopped discussing it. * * * [The children] had confidence in their parent and did not do so.” There can be no doubt, however, that all parties recognized that legal title was in the children and that power to revoke the agency resided in them.
It is conceded that checks payable to the petitioners were received by the decedent, indorsed by him and placed in his bank account. The respondents view these transactions as evidence of the decedent’s continued ownership of the securities in the accounts. However, there is no proof that decedent converted these funds to his own use. Purchases of securities continued to be made for the accounts. There is no evidence that *879 the decedent failed to use the moneys of his principals for their use and benefit.
It is not unusual for a father who has given securities to his children and who has managed them during the children’s minority, to continue to exercise influence in the investment of the funds. Nor is it unusual for the children to defer to his judgment and to leave the entire management to him. The relationship between father and children had deteriorated in 1953 and 1954, and this change in family and personal relationships quite obviously germinated the desire in the decedent to take back what he had given. If the gifts were inchoate, he could change his plan. The gifts had long ago been consummated, however, and the decedent was dealing with securities owned by others. He had no right to take them for his own use. His executor must return the securities to the rightful owners.
The petitioners are not guilty of laches in failing to demand the securities during the lifetime of their father, which ended on October 17, 1959. It is true that the monthly statements of account by the brokers to the petitioners showed the delivery of the bonds in August, 1953 and February, 1954, but the petitioners had no reason to believe that their father had converted them to his own use. Insofar as this record shows, the decedent never gave them any notice whatever of his intent to deprive them of their property,. On the contrary, the petitioners ’ mother testified that just two or three years ago — which would be just before his death — he told her that the securities were “ in his safe deposit box in two separate stacks, one in the name of his son and one in the name of his daughter — not in the name but with their name on top of the securities. * * * As a matter of fact he told me that they were Carol Jane’s bonds and Tony’s bonds, they were separated, and each of them had an elastic band around them — I remember the expression — and their names on the top of the package. ’ ’ There was, therefore, never any definitive repudiation of the fiduciary duties and obligations by the decedent.
Nor is the claim barred by the Statute of Limitations. It matters not whether the 6-year limitation or the 10-year limitation be applicable. The decedent was the agent of the petitioners and had the power to manage the investments and to receive and hold the securities. Where an agent is to receive and hold property for the benefit of his principal, a demand by the principal is necessary in order to start the statute running or, at least, knowledge of such facts as would indicate that the agent was thereafter holding the property for his own use. *880 (Dumbadze v. Lignante, 244 N. Y. 1; Matter of Hayden, 175 Misc. 506; Civ. Prac. Act, § 15.) The mere fact that the decedent had withdrawn securities from the firm of brokers with whom he had placed them, does not constitute notice of decedent’s claim of title. Under all of the circumstances, the petitioners were justified in believing that the decedent continued to hold them for their benefit, as, indeed, he himself represented to their mother.
The petitioners are, therefore, entitled to a decree directing delivery to them of New York State Housing bonds in the face amount of $30,000 and New Jersey Highway Authority bonds in the face amount of $25,000. The petition also asks for the interest or income thereon. Section 206-a authorizes recovery of the specific personal property “ or the proceeds thereof”, and would thus permit recovery of the proceeds of any coupons that were collected by the decedent. The proof, however, does not touch upon the matter of income or interest, and it does not appear whether or not the decedent had collected any income on the bonds. Moreover, since he held the securities as agent of the petitioners, there is no basis on the present record for determining whether there are expenses or deductions to be taken into account. The ruling herein is without prejudice to the claim of the petitioners against the estate for any moneys that may be owed to them by the decedent.