Samuel **BUCHMAN**, Plaintiff,

v.

**AMERICAN FOAM RUBBER CORPORATION, Milton R. Ackman, as Trustee of American Foam Rubber Corporation, Bankrupt, Marie Louise deMontmollin, Alexander F. Pathy and Suzanne M. Pathy, Defendants.**

United States District Court
S. D. New York.
Oct. 25, 1965.

Martin Whyman, New York City, for plaintiff.

Kleeberg & Greenwald, New York City, for defendant Ackman, Jacob Greenwald, New York City, of counsel.

Winer, Neuburger & Sive, New York City, for defendants deMontmollin and Pathy, Murray C. Bernays, David Sive, New York City, of counsel.

COOPER, District Judge.

Motion for summary judgment in their respective favor by trustee Ackman and the individual defendants on the Trustee's second counterclaim and cross claim.[1]

Briefly stated, by his second counterclaim and cross claim, the trustee seeks to recover for the benefit of bankrupt's creditors under Section 70, sub. e of the Bankruptcy Act, 11 U.S.C. § 110, sub. e, certain moneys paid by the bankrupt at a time it was solvent to its retired president under a "severance agreement" on

---

[1] The present motions relate solely to the trustee's second counterclaim and cross claim. They seek, as alternative relief, an order specifying the material facts which appear without substantial controversy. Rule 56(d), F.R.Civ.P. By informal request, plaintiff asks summary judgment in his favor. Fuller v. Volk, D.C.N.J., 1964, 230 F.Supp. 25; American Automobile Ins. Co. v. Indemnity Ins. Co. of North America, D.C.Pa., 1953, 108 F.Supp. 221, aff'd 3d Cir., 1956, 228 F. 2d 622.

the theory such payments violated an antidividend provision contained in debentures then outstanding.

## BACKGROUND

Assigned to this Court under local Rule 2 for all purposes (S.D.N.Y. Civil Rule 2), this litigation involves the affairs and transactions of American Foam Rubber Corporation (hereinafter AFR), and those who at various times were its officers, directors and stockholders.[2]

In June, 1960 plaintiff Samuel Buchman filed suit against AFR and the individual defendants, Marie Louise deMontmollin, Alexander F. Pathy and Suzanne M. Pathy. For many years and until May 17, 1957, Buchman was a substantial stockholder of AFR and served as its president and a director. On that date, plaintiff and his son sold their stock interests to the individual defendants who thereby became sole owners of AFR's common stock; further, plaintiff resigned as director and president of AFR. AFR's business (manufacture and distribution of foam rubber products) was thereafter conducted by Alexander Pathy as president and the other individual defendants as officers and directors. In February, 1961 it was adjudicated a bankrupt and Milton R. Ackman was appointed and qualified as Trustee in bankruptcy of AFR.[3]

Plaintiff's complaint, based on diversity jurisdiction, sets forth two causes of action. The first, against AFR, alleges that it defaulted in payments of principal amounts of debentures held by plaintiff; the second, against the individual defendants, alleges conduct violating an agreement made on or about May 17, 1957 under which Alexander Pathy and Marie Louise deMontmollin were to subordinate certain debentures issued to them by AFR and its subsidiary to the rights of holders of certain debentures issued by AFR to plaintiff.

The answers of AFR (filed July 13, 1960) and the individual defendants (original answer filed December 1, 1960) denied certain material allegations and interposed various affirmative defenses.

After AFR was adjudicated a bankrupt in 1961, the individual defendants were given leave to file an amended and supplemental answer setting forth certain counterclaims. Further, on his own motion, the Trustee was added as a defendant, permitted to defend on behalf of AFR and serve and file an answer setting forth (a) a "first counterclaim" against plaintiff and (b) a "second counterclaim" against plaintiff and cross claim against the individual defendants (see order dated December 19, 1961).[4]

## THE TRUSTEE'S SECOND COUNTERCLAIM AND CROSS CLAIM

The Trustee's second counterclaim and cross claim alleges that AFR, a New York corporation, was organized in March, 1950 by plaintiff who served from that time until May 17, 1957 as its president and a director; during that period, plaintiff and his son together owned capital stock of AFR in amounts varying from 40% to 33%; on May 17, 1957, plaintiff and his son sold to the individual defendants all of the issued and outstanding stock of AFR then held by them, plaintiff thereupon resigned from AFR and its subsidiaries, remaining however until December 31, 1958 as consultant in matters of business policy, to render services as such when called upon by AFR (¶ 15).

---

2. A detailed statement of the history of this action, describing the several claims, counterclaims and cross claims appears in the affidavit of David Sive, Esq., sworn to June 25, 1964, submitted in support of the motion for assignment of this case to a Rule 2 Judge.

3. In January, 1961 (after plaintiff had commenced this action) AFR filed a voluntary arrangement under Chapter XI of

the Bankruptcy Act. It was permitted to continue as debtor in possession and operate its business until February 21, 1961 when it was adjudicated a bankrupt.

4. Interposed thereafter were the Trustee's answer; the amended and supplemental answer of the individual defendants; plaintiff's reply to these pleadings and the individual defendants' reply to the Trustee's cross claim.

Until the stock sale and resignations, plaintiff and defendants Alexander F. Pathy and deMontmollin were all of the directors and principal executive officers of AFR; between May 17 and May 20, 1957, defendants Alexander F. Pathy and deMontmollin were such; and from May 20 until May 31, 1957, the same was true as to the individual defendants. After May 31, 1957, the individual defendants were three of five persons who constituted all of AFR's directors and principal executive officers (¶ 16).

The pleading, in detail, further alleges that the individual defendants, acting as directors and officers, caused AFR to make certain payments to plaintiff under his "Severance Agreement" with AFR of May 17, 1957; the agreement and payments were made without consideration; the payments constituted: (1) a conversion of AFR's assets; (2) an unjust enrichment of plaintiff at AFR's expense; and (3) a dividend forbidden by provisions of certain debentures (¶¶ 17–26). As a result, AFR and the Trustee were damaged in the sum of $73,700, that being the aggregate amount of payments claimed to have been made to plaintiff (¶ 27).

The cause of action for the damages claimed is alleged to arise under Section 70, sub. e of the Bankruptcy Act, 11 U. S.C. § 110, sub. e. (¶ 28).

### THE REPLIES

Plaintiff's reply to the Trustee's second counterclaim denies material allegations of fact and asserts, as affirmative defenses, that the counterclaim fails to set forth a claim on which relief can be granted; in any event, it is barred by the applicable statute of limitations (¶¶ 8–17). It demands judgment dismissing the counterclaim.

The reply of the individual defendants denies material factual allegations of the Trustee's cross claim and interposes as affirmative defenses that the cross claim fails to set forth a claim upon which relief can be granted and that the cause is barred by the applicable statute of limitations (¶¶ 1–6). It prays for judgment dismissing the cross claim.

### CONTENTIONS OF THE PARTIES AND ORAL ARGUMENT

After a preliminary hearing and the filing of reply briefs, the Court entertained oral argument on July 2, 1965.[5] In addition to the challenging legal issues, it appeared the Trustee had modified the grounds upon which he urged relief. In his memorandum filed March 25, 1965 in support of summary judgment, the Trustee stated at page 1:

Ackman's cause * * * is against [the individual defendants] * * * for causing it [AFR] to pay, improperly, dividends to themselves.

The payment of the dividends was forbidden by virtue of the provisions of bonds of A.F.R., held by two infants, Laurent deMontmollin and Edmee deMontmollin. Impropriety because of impairment of capital or other statutory ban is not claimed.

On oral argument, the Trustee, in response to the Court's question whether he relied solely upon the debenture provisions, responded affirmatively (pp. 5, 7). An ultimate issue, therefore, is whether the payments to plaintiff by AFR under the May 17, 1957 "Severance Agreement" can be said to be, as a matter of fact or law, "dividends" paid by AFR in violation of certain debenture provisions. If not, the Trustee's claim must fall.

Preliminary matters, however, are the subject of conflicting contentions by the parties.[6] Plaintiff and individual de-

---

5. A copy of the stenographic minutes of oral argument on July 2, 1965 is hereby made part of the record.

6. Plaintiff, without conceding the validity of the Trustee's contentions on other issues, takes the position that the motions can be determined on the single issue of whether the payments to him were "dividends" proscribed by the debentures. Plaintiff's memorandum filed May 6, 1965, page 5.

fendants challenge the Trustee's cause as time-barred and, in any event, as failing to set forth a claim upon which relief can be granted. They assert that those in whose shoes the Trustee seeks to stand are not, and have not the capacity to become creditors of the bankrupt; if they did, there would be no provable claim; if such a claim exists, there being an adequate legal remedy, the broad equitable relief here sought would be inappropriate. The Trustee relies upon Section 70, sub. e of the Bankruptcy Act to establish his claim and applicable state law, incorporated therein, to demonstrate its timeliness.

## THE STATUTE

The Trustee's claim is predicated upon Section 70, sub. e of the Bankruptcy Act, 11 U.S.C. § 110, sub. e. It provides in part:

§ 70. Title to Property
 * * * * * * *

e. (1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor.

(2) All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer or obligation shall be avoided by, the trustee for the benefit of the estate * * *. The trustee shall reclaim and recover such property or collect its value from and avoid such transfer or obligation against whoever may hold or have received it * * *.

(3) For the purpose of such recovery or of the avoidance of such transfer or obligation, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction.

 * * * * * * *

 Under the Act, a trustee may acquire rights of action he could not possess as a successor to the bankrupt and may avoid transfers the bankrupt itself could not have avoided. Stellwagen v. Clum, 1918, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507; Knapp v. Milwaukee Trust Co., 1910, 216 U.S. 545, 30 S.Ct. 412, 54 L.Ed. 610; Re Progressive Wall Paper Corp., 2 Cir., 1916, 229 F. 489, L.R.A. 1916E, 563. Subrogated to rights of creditors as of the time of the filing of the bankruptcy petition, a trustee is vested with title to property transferred by the bankrupt in fraud of its creditors. § 70, sub. a(4), 11 U.S.C. § 110, sub. a(4). In substance, as against a trustee in bankruptcy, a transfer which under any federal or state law is "fraudulent as against or voidable for any other reason by any creditor" shall be null and void. § 70, sub. e, 11 U.S.C. § 110, sub. e(1), (2).

 The elements of the cause of action to which a trustee becomes subrogated under Section 70, sub. e of the Act are not determined by the Bankruptcy Act, but rather by state law, or federal law other than the Act. Upon the grounds of avoidance under federal or state law, the Trustee may avoid any transfer by the bankrupt which any creditor of the bankrupt could have avoided. Connell v. Walker, 1933, 291 U.S. 1, 5, 54 S.Ct. 257, 78 L.Ed. 613; Stellwagen v. Clum, supra.

## THE TRUSTEE'S CLAIM

1. Existence of a creditor with a provable claim against the bankrupt.

 To succeed under Section 70, sub. e of the Act, a trustee must establish that one or more creditors have a provable claim thereunder by which he would have been entitled to avoid the transfer

had bankruptcy not intervened.[7] National Bond & Investment Co. v. Jones, 6 Cir., 1935, 78 F.2d 601; 4 Collier on Bankruptcy (14th Ed.) § 70.90, n. 31. This is so because Section 70, sub. e does not give a trustee rights of avoidance in addition to those possessed by a creditor; rather, it places him in the creditor's legal shoes. Davis v. Willey, N.D.Cal., 1920, 263 F. 588, aff'd, 9 Cir., 1921, 273 F. 397 (fraudulent transfer).

In this case, the Trustee seeks to assert the putative right of two infants, Laurent and Edmee deMontmollin, respectively son and daughter of defendant deMontmollin, to rescind a transfer by which defendant deMontmollin converted AFR debentures held by them into preferred stock; having rescinded that transfer, the Trustee argues that under those debentures, the infants as creditors have a provable claim against AFR, because its payments to plaintiff under the May 17, 1957 "Severance Agreement" constituted a violation of their antidividend clause; that by Section 70, sub. e of the Act, the Trustee may assert that claim to avoid and recover the payments on behalf of the bankrupt's estate.

The facts with regard to the debentures and their conversion appear without material dispute.

In 1950, AFR issued a debenture series totalling $120,000, later referred to a Series A. Series A was to fall due in 1960. Each debenture called for the payment of semiannual principal payments amounting to 5% of the original principal amount. Payments of principal were to begin October 1, 1951.[8]

Four Series A debentures duly issued for full consideration, were given as gifts to Edmee and Laurent deMontmollin, infant children of defendant deMontmollin, by their grandfather, one Egry, who died in 1953.[9] Those numbered 34 and 35, each in the amount of $3,000, were issued by AFR to Edmee and Laurent respectively on December 29, 1952. On January 27, 1953, two others, numbered 36 and 37, each in the amount of $1,500 were likewise issued.

In April, 1958 AFR amended its certificate of incorporation, increasing capital to $1,000,000 by authorizing issuance of 60,000 additional shares of Class A Stock, par value $5 per share, and 3000 shares of 5% Cumulative Preferred Stock, par value $100 per share.

Resolutions adopted by the directors and shareholders provided that outstanding debentures and promissory notes of AFR could be exchanged for the newly authorized preferred stock on the basis of one share of stock for each $100 of the face amount of the notes and debentures.

Although the exchange was not compulsory, defendant deMontmollin surrendered to AFR debentures and notes owned by her totalling $291,000, receiving therefor 2910 shares of the preferred stock. In addition, by co-signing with the infants' father [10] the transfer forms attached to each bond issued to their children, the four debentures were delivered to AFR and cancelled. In exchange for those debentures, representing an aggregate face amount of $9,000, AFR issued to each infant 45 shares (par value $4,500) of the preferred stock. No court

---

7. A trustee, under state law, may succeed to a creditor's right of avoidance without the requirement of lien or other process. In such case, reliance of the "strong-arm" clause of § 70, sub. c of the Act, 11 U.S.C. § 110, sub. c, giving the trustee the status of an ideal hypothetical creditor as of the bankruptcy petition's filing date, is unnecessary. In re Fish Bros. Wagon Co., 8 Cir., 1908, 164 F. 553, 555, 26 L.R.A.,N.S., 433. See 4 Collier on Bankruptcy (14th Ed.) § 70.69 [1] at p. 1514.

8. In 1955, AFR issued a second debenture series denominated Series B, totalling $300,000. To fall due in 1965, principal payments, under terms similar to those of Series A, were to begin February 1, 1956.

9. At the time these debentures were issued and presently, both Laurent and Edmee deMontmollin are infants under the age of 21.

10. Mr. deMontmollin died in 1959.

order was secured approving the transfer; nor was a guardian appointed who ratified the transaction.

The infants' debentures had consisted of a single sheet of paper with terms printed upon one side. AFR therein promised to pay the registered holder a specified sum at given intervals subject to conditions and terms stated in six separately numbered paragraphs: (1) defining the issue; (2) form of issuance and registration; (3) transfer procedure; (4) interest payment; (5) payment of principal; and (6) corporate right of prepayment. Paragraph 5 of each bond stated in pertinent part (emphasis added):

> [AFR] shall * * * not be required to make any payment on account of principal if [it] * * * has not accumulated earnings and profits at least sufficient in amount to provide for that payment. [AFR] agrees that *so long as any past due installments of principal remain unpaid it will not declare any dividends upon any class of its capital stock* and that installments of principal previously unpaid shall be made good out of the first accruing earnings and profits from which such payments may be made * * *.[11]

Although at all relevant times it appears that AFR was financially able to properly pay principal amounts as they became due,[12] concededly, no installment of principal was ever paid. Accordingly, arguing that the infants may avoid the transfer and effect recession, the Trustee seeks to assert that right and the breach of the antidividend provision to recover, under § 70, sub. e of the Act, monies AFR paid pursuant to the May 17, 1957 "Severance Agreement" with plaintiff.

■ The individual defendants assert that the transfer of the infants' debentures and their conversion into preferred stock is neither void nor voidable. Their argument is premised on the view that defendant deMontmollin, her husband and the infants, at the time of the transfer, were Swiss domiciliaries;[13] under the Swiss Civil Code, parents have the right and power to validly transfer infant's chattels, i.e. to execute instruments cancelling debentures in exchange for preferred stock issued in the name of the infants[14]; New York conflict of law rules, in respect of comity, would lead to the application of Swiss substantive law[15]; and New York courts would hold the transfer valid and binding.[16]

■ The Trustee concedes that if Swiss substantive law is applicable, the infants have no right to recission and the

---

11. The words "earnings and profits" as used in paragraph 5 were defined as "accumulated profts less all taxes, dividends and payments on account of principal of said debentures."

12. As we view it, see p. 72, infra, particular findings on this issue are unnecessary. From statements submitted, it appears AFR's capital and net worth (rounded to the nearest thousand) amounted to $550,000 in May, 1957; $630,000 on November 11, 1957; $1,059,-000 on October 12, 1958; $991,000 on October 11, 1959 and $540,000 on October 9, 1960.

13. Swiss domicile is assumed for the purposes of this motion.

14. See deposition of Dr. Ernst Hockenjos, doctor juris utriusque, Advokat Und Notar, Basel, Switzerland, filed May 5, 1965, especially answers to interrogatories 5, 6, 8, 10 and 16.

15. Petition of Altman, Sur., 1954, 138 N.Y.S.2d 336; Restatement, Conflict of Laws (1935 Supp.) Chap. 5.

16. See Boyd v. Curran, S.D.N.Y., 1958, 166 F.Supp. 193. Conceding, arguendo, applicability of New York substantive law, the individual defendants argue the transfer was not absolutely void, citing In re Allen's Estate, 1961, 30 Misc.2d 874, 220 N.Y.S.2d 296; Application of Goodchild, 1936, 160 Misc. 738, 290 N.Y.S. 683. In determining whether the Trustee has stated a claim upon which relief could be granted, however, it would be suficient if the transfer was merely voidable. See note 18, infra.

case would end there [17]; assuming Swiss domicile,[18] however, New York follows the general rule that "capacity to make a valid conveyance of a chattel is determined by the law of the State where the chattel is situated at the time of the conveyance" [19] and that no matter of comity appears which would lead New York courts to apply Swiss substantive law.[20] We agree that under New York law, the infants may avoid the exchange by their parents of debentures for preferred stock.[21]

On less firm ground, however, is the Trustee's argument that, if granted recission, the infants would then be creditors with a claim provable in bankruptcy as to whom the challenged payments to plaintiff would be "voidable" for any reason "under any * * * state law."

The Trustee would treat the infants as possessed of a right to assert the purported breach of the antidividend provision and argues that New York courts would grant equitable relief, such as an injunction mandating the return to AFR of dividends paid out on its violation.

The individual defendants, however, would regard the infants as having an adequate remedy at law in a suit for damages in the principal amount of the

debentures, plus interest; moreover, the payments to plaintiff were not transfers "voidable" under "state law" within the meaning of Section 70, sub. e of the Act and are thus not "void" as against the Trustee.

The resolution of these conflicting contentions is not entirely free of doubt. In relying solely upon the debenture provisions, the Trustee asserts a right grounded in contract. He makes no claim of fraud, conversion, or impairment of corporate capital in violation of restrictive statutes.[22]

The Trustee realizes that, prior to bankruptcy, the infants could have had an action brought in their behalf for money damages against AFR on the matured debentures;[23] further, they could have sought to hold plaintiff and the individual defendants individually liable on the theory they maliciously induced AFR to breach the debentures.[24] Neither of these causes of action, however, support a state recognized right of avoidance of the payments by AFR to plaintiff under the "Severance Agreement."

■ Moreover, corporate violation of agreements to pay debts out of a designated fund does not arm debenture hold-

17. Transcript, supra, note 5, at page 7.

18. Defendant Ackman's Memorandum, filed March 25, 1965 at page 35.

19. Hutchison v. Ross, 1933, 262 N.Y. 381, 187 N.E. 65, 89 A.L.R. 1007; see Weissman v. Banque De Bruxelles, 1930, 254 N.Y. 488, 173 N.E. 835; United States v. Guaranty Trust Co., 2 Cir., 1934, 69 F.2d 799, 801, aff'd. 293 U.S. 340, 55 S.Ct. 221, 79 L.Ed. 415; Restatement, Conflict of Laws §§ 49, 52, 255, 262 (1934). See also, Klinger v. Hyman, 2 Cir., 1915, 223 F. 257.

20. See Convention of Friendship, Commerce, Extradition, &c., with the Swiss Confederation, proclaimed in 1855, in "Treaties and Conventions Between the United States and Other Powers Since July 4, 1776" (1871). See also, Zaphiriou, the Transfer of Chattels in Private International Law (1956) 11.

21. See Casey v. Kastel, 1924, 237 N.Y. 305, 142 N.E. 671, 31 A.L.R. 995; Application of Goodchild, 1936, 160 Misc.

738, 290 N.Y.S. 683, 701; Clark, New York Law of Contracts, §§ 696, 704, 719, 724. We thus do not rule upon whether the parents could transfer title to AFR. See Trustee's Memorandum, filed March 25, 1965, page 30. It is immaterial that the infants have not sought recission or filed claims against the bankrupt. Sections 57, sub. n and 70, sub. c, sub. e of the Bankruptcy Act, 11 U.S.C. §§ 93, sub. n. 110, sub. c, sub. e; see Irving Trust Co. v. Kaminsky, S.D.N.Y., 1937, 22 F. Supp. 362; see also, Springmann v. Gary State Bank, 7 Cir., 1942, 124 F.2d 678; 3 Collier on Bankruptcy (14th Ed.) §§ 57.30, 57.31.

22. Such claims are readily recognized. See 4 Collier on Bankruptcy (14th Ed.) §§ 70.69, 70.90, 70.93.

23. Trustee's Memorandum, filed March 25, 1965, pp. 23–4.

24. Inter alia, the Trustee relies upon Navarro v. Fiorita, 1946, 271 App.Div. 62, 62 N.Y.S.2d 730; Vassardakis v. Parish, S.D.N.Y., 1941, 36 F.Supp. 1002, 1005.

ers with an equitable lien thereon. See Barnes v. United Steel Works Corp., Sup. 1939, 11 N.Y.S.2d 161 (dicta) (bondholders recover damages for breach of bond provision requiring corporate payments into sinking fund for bond redemption). Where payments on income bonds were to be made from surplus, no special fund being created, the New York Court of Appeals has denied bondholders the right to an accounting for nonpayment, holding the rights under the bonds to be contractual and no fiduciary relation exists between the bondholders and corporation in that regard. Thomas v. New York & G. L. Ry. Co., 1893, 139 N.Y. 163, 34 N.E. 877.

■ The infants remedy at law against AFR is not inadequate simply because AFR is now bankrupt. Irrespective of the apparent uncollectibility of any judgment, American Cities Power & Light Corp. v. Williams, 1947, 189 Misc. 829, 69 N.Y.S.2d 197, the adequacy of a legal remedy is determined by the ability to bring an action at law and recover judgment.[25] Blank v. La Montagne, Chapman Co., 1924, 123 Misc. 238, 205 N.Y.S. 45; see Note, 13 St. John's L. Rev. 44 (1938).

We are not convinced, however, that under the law of New York, the infants would be foreclosed from avoiding the transfer. Had the infants claim been asserted in 1960, prior to bankruptcy, a judgment entered in their behalf, and execution returned unsatisfied, they would have been able to proceed against directors or officers of AFR who knowingly caused it to make payments to plaintiff in violation of the debentures and against plaintiff for his participation therein.[26] N.Y. General Corporation Law, McKinney's Consol.Laws, c. 23, §§ 60, 61, 70 (now N.Y. Business Corporation Law, McKinney's Consol.Laws, c. 4, §§ 720, 1201). See Regan v. Prudence Co., Sup.1942, 17 N.Y.S.2d 422; Knapp v. Milwaukee Trust Co., 1910, 216 U.S. 545, 30 S.Ct. 412, 54 L.Ed. 610; Bankruptcy Act, § 70, sub. c, 11 U.S.C. § 110, sub. c; cf. Field v. Lew, S.D.N.Y., 1960, 184 F.Supp. 23 (Trustee unsuccessful in asserting right of action in corporation against officers and directors where stockholders had ratified the transaction and the corporation was not thereby rendered insolvent).

■ In addition, the New York Court of Appeals recognized in Quintal v. Kellner, 1934, 264 N.Y. 32, 189 N.E. 770 that the trustee may have an action to compel corporate directors or officers to make good losses caused by transfer of corporate monies without consideration or benefit to the corporation.[27]

Individual defendants, however, urge that the "state law" which would make

---

25. Futility of an action at law because of insolvency has been held to be a factor in sustaining equity jurisdiction despite availability of a legal remedy where jurisdiction in equity and at law is concurrent. Zeiser v. Cohn, 1913, 207 N.Y. 407, 101 N.E. 184, 47 L.R.A.,N.S., 186 (action to enforce vendor's lien); see Mills v. Bliss, 1873, 55 N.Y. 139.

26. New York's General Corporation Law, section 60, was an extension, rather than in derogation, of common law. Rubenstein v. Berch, 1941, 261 App.Div. 265, 25 N.Y.S.2d 202. Any action available to the New York Attorney General, however, does not aid the Trustee. See Transcript, supra, n. 5 at p. 20; In re F. A. Whitney Carriage Co., D.C.Mass., 1953, 173 F.Supp. 709.

27. The right asserted was that of the corporation. The trustee was held to have failed to state a cause of action. Compare. Feldman v. Capitol Piece Dye Works, Inc., S.D.N.Y., 1960, 185 F.Supp. 426 (trustee succeeds in action against officer for wrongful appropriation of corporate funds), revd. on oth. gds., 2 Cir., 293 F.2d 889 (transfer held to be made on personal authorization of bankrupt's former officer, not on order of bankrupt), cert. denied, Peoples Bank of Haverstraw v. Feldman, 368 U.S. 948, 82 S.Ct. 389, 7 L.Ed.2d 344. See also, Quintal v. Fidelity & Deposit Co. of Maryland, 1932, 142 Misc. 657, 255 N.Y.S. 259, aff'd. 238 App.Div. 820, 262 N.Y.S. 924, rearg. den. 239 App.Div. 780, 263 N.Y.S. 973 (holding, on its facts, the trustee did not have a cause of action for monies it paid voluntarily under ultra vires indemnity contract).

the transfer voidable at the instance of a creditor must apply ex proprio vigore, that is, by its own terms provide for voidability. This asserted requirement, the subject of extended argument by the parties, was pruned from the dicta in Judge Learned Hand's scholarly analysis of Section 70, sub. e of the Act in Dabney v. Chase National Bank, pet. for cert. dism'd per stip. of counsel, 1953, 346 U.S. 863, 74 S.Ct. 102, 98 L.Ed. 374, noted approvingly, 66 Harv.L.Rev. 1127 (1953), with criticism, 38 Minn.L.Rev. 78 (1953).[28]

In Dabney, a reorganization trustee sued Chase National Bank, as indenture trustee, for an accounting. Briefly, Chase had collected a loan by it to the debtor at a time it knew the debtor was in a weak financial condition and payment of the loan raised the serious likelihood the debtor could not pay the bonds issued under the trust indenture. Eight years later, the debtor became insolvent and filed a reorganization petition. On behalf of the bondholders, the reorganization trustee claimed Chase had breached its fiduciary duties. The Court so held, but would not apply the rule of Moore v. Bay, 1931, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 whereby the entire payment by the debtor to Chase under the loan agreement would be recoverable by the trustee.

Applicability of Moore v. Bay, supra, rested upon whether the trustee's action was brought under Section 70, sub. e of the Act. After setting forth that section's "literal meaning," the Court of Appeals, per L. Hand, J., stated (201 F.2d at 639):

We think that its purpose also precludes its application to the facts at bar. The bondholders' claim arises because the bank's collection of the loan was a violation of a fiduciary relation that they derived, not from [the debtor], but from the bank. They not only had no right in 1932 to "avoid" the payment [by debtor to the bank] merely as creditors of [the debtor]; but they had no such right by virtue of any interest that [the debtor] had given them as security for their rights as creditors; they remained simple creditors. Their right to treat the payment as a constructive trust had as little to do with any right derived from [the debtor], as though the bank had made an outside agreement with them that it would not collect its debt until the bonds were paid. * * *

The Court continued:

* * * It seems likely that the proper interpretation of the section is that it applies only to occasions where the "Federal or State law" "under" which the "transfer" is "avoided" directly nullifies it ex proprio vigore, and not indirectly by creating rights (e. g. a lien) out of some transaction between one creditor and the bankrupt which the "transfer" would defeat, if it were valid; in short that the "creditor's" right must be conferred upon him simply because he is a creditor. * *

* * * * * * *

* * * the bondholders may not invoke any "law" that created rights arising out of a transaction between them and the bankrupt.[29]

We are unable to find, however, that the Dabney rationale requires nonsuit of the trustee here.[30]

In Dabney, the right sued upon arose from the fiduciary relationship between the bondholders and the indenture trustee; here, from the contractual relation between the infant bondholders and the bankrupt. Unlike the validity of the loan

---

28. For prior history of this litigation, see S.D.N.Y., 1951, 98 F.Supp. 807, reversed in part on other grounds, 2 Cir., 196 F.2d 688, and reversed after retrial, 2 Cir., 201 F.2d 635.

29. See Clark, J., dissenting, 201 F.2d at 642.

30. This is not meant to imply that Dabney is authority supporting the Trustee's claim.

agreement and payment in Dabney, the payments to Buchman are challenged as made without consideration and subject to attack under state law by creditors per se, not merely creditors of one class.[31]

Moreover, under the common law and statute law of New York, we have indicated that the infants would not be precluded from proceeding in equity despite the apparent existence of an adequate remedy at law.[32]

■ We thus hold that a claim has been stated upon which relief can be granted [33] and pass to consider whether the claim is barred by a statute of limitations.

2. The claim is not time-barred.

■ Section 11, sub. e of the Bankruptcy Act, 11 U.S.C. § 29, sub. e, granting a trustee two years from adjudication date (or such further time as state or federal law permits) to institute proceedings on behalf of the bankrupt's estate, applies only to causes of action existing at the time of filing the petition in bankruptcy. See Tuffy v. Nichols, 2 Cir., 1941, 120 F.2d 906, cert. denied, 314 U.S. 660, 62 S.Ct. 113, 86 L.Ed. 528 (turnover order); Carr v. Yokohama Specie Bank, 182 Misc. 983, 50 N.Y.S.2d 68, 272 App. Div. 64, 69 N.Y.S.2d 262, aff'd 297 N.Y. 674, 76 N.E.2d 330. It does not revive a cause of action based upon state law then barred by a state limitation statute. Austrian v. Williams, 2 Cir., 1952, 198 F.2d 697, cert. denied 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701.

■ Where a trustee in bankruptcy seeks to succeed to the right of a creditor, his claim is subject to the same defenses that would have been available had the creditor maintained a suit in the absence of bankruptcy. In re Di Pierro, D.C.Me., 1958, 159 F.Supp. 497; cf. Quintal v. Kellner, supra. This includes the defense of limitation of action. See Callaghan v. Bailey, 1943, 179 Misc. 673, 38 N.Y.S.2d 203, aff'd 266 App.Div. 915, 43 N.Y.S.2d 516, aff'd 293 N.Y. 396, 57 N.E.2d 729; Collier's Bankruptcy Manual, § 70.46 (2d ed.).

■ Accordingly, unless further time is available to the trustee under Section 11, sub. e of the Act, where the trustee relies upon a creditor's state law rights in asserting voidability under Section 70, sub. e of the Act, the time limitation is that which state law prescribes. Austrian v. Williams, supra; Blackford v. Commercial Credit Corp., 5 Cir., 1959, 263 F.2d 97, cert. denied, 361 U.S. 825, 80 S.Ct. 74, 4 L.Ed.2d 69; see Heffron v. Duggins, 9 Cir., 1940, 115 F.2d 519.

AFR was adjudicated bankrupt on February 21, 1961. The instant claim, interposed March 20, 1962, relates to alleged wrongs occurring between May, 1957 and the end of 1958.

The individual defendants point out that except for 11 payments (involving some $24,000), by adjudication date, most of the monies due plaintiff under his "Severance Agreement" had been paid; adjudication date was more than three years after such payment; the Trustee's claim is barred by a three year statute dealing with waste; [34] further, the Trustee is not entitled to the tolling of this limitation because of the infancy of the creditors in whose shoes he allegedly stands.[35]

---

31. Transcript, supra, pp. 15–20.

32. See p. 67, supra.

33. Compare the cases dealing with acts of misappropriation. In Rockmore v. Schilling, D.N.J., 1947, 72 F.Supp. 172, the trustee failed to avoid payments to bankrupt's chief stockholder and director. However, without reference to solvency, Williams v. Brownstein, D.C. Me., 1 F.2d 470, sustained judgment against a dominant stockholder for recovery of salary and other payments in disregard of fiduciary duties to other creditors. See Lilly v. Ernst, S.D.W.Va., 1952, 113 F.Supp. 178 (insolvency); cf. Irving Trust Co. v. Kaminsky, supra.

34. N.Y. Civil Practice Act, § 49(7) [now N.Y.C.P.L.R. § 214]. See Stichman v. Fischman, S.D.N.Y., 1957, 154 F.Supp. 867; American Cities Power & Light Corp. v. Williams, supra.

35. The Trustee cites no decisional authority holding him entitled to the tolling provision. In argument by analogy, the individual defendants suggest that under the Trustee's theory, if his "creditor, with

**72**

The Trustee, on the other hand, suggests alternative arguments supporting the timeliness of his claim: (1) infancy tolls the running of the statute, N.Y.C. P.A. § 60 [now § 208, N.Y.C.P.L.R.]; (2) as a hypothetical judgment creditor under Section 70, sub. e of the Act, the period would not begin to run until entry of judgment and return of unsatisfied execution, Rosenkrantz v. Doran, infra; moreover, (3) the applicable limitation period is six years. N.Y.C.P.A. § 48(8) [now § 213(8), N.Y.C.P.L.R.].[36]

■■■■■ As we see it, the Trustee is entitled to the benefit of the infancy provision tolling the applicable statute of limitations, whether it be the three or six year statute. Subject to the same defenses as the creditor in whose shoes he stands, the Trustee is entitled to assert fully the rights of that creditor. Recognition of that principle here contravenes no state interest[37] and comports with the remedial purpose of the Bankruptcy Act.[38]

Moreover, even if the three year statute of limitations applied and the Trustee's arguments were rejected, the limitations defense would be, at best, partial. Concededly, on adjudication date, the three year statute would not have run on all payments under the "Severance Agreement." Accordingly, on a meritorious claim, partial relief would be available. For the purpose of these motions, however, we assume no part of the claim is time-barred.

### BREACH OF THE DEBENTURES

The Trustee claims that "dividends" were paid by AFR at a time it was in default of payment on the infants' debentures; that constituted a breach of the debentures and permits recovery here.[39]

There is no claim that AFR's directors formally declared a dividend and made any payments thereunder. Rather, the Trustee contends that payments to plaintiff under the "Severance Agreement" were "constructive dividends" and thus "dividends" within the meaning of paragraph five of the debentures.

In early May, 1957, Buchman had notified the individual defendants that he wished to retire and wanted to sell his stock interest in AFR and a real estate affiliate, Burlington Holding Corporation.[40] Negotiations were had regarding the sale of stock and terms upon which Buchman would sever his official connection with AFR.

an approved claim, were sentenced to prison for fifty years, the time of the Trustee to sue would be likewise extended." Memorandum, filed May 5, 1965, p. 67. See, however, Matter of Reilly, 1956, 17 Misc.2d 1077, 156 N.Y.S. 2d 478, 480, aff'd. without opinion, 3 A.D.2d 1001, 165 N.Y.S.2d 431, leave to appeal denied, 4 A.D.2d 833, 166 N.Y.S. 2d 299; N.Y.C.P.A. §§ 43, 60 [now N.Y. C.P.L.R. § 208].

36. See Gottfried v. Gottfried, 269 App.Div. 413, 56 N.Y.S.2d 50. The Trustee's contention that plaintiff was absent from the state during the applicable period, thus tolling any limitations statute, N.Y.C. P.A. § 19 [now § 207, N.Y.C.P.L.R.], is inconclusive. See N.Y.C.P.A. §§ 233, 235 [now, § 313, N.Y.C.P.L.R.].

37. See Buttles v. Smith, 1939, 281 N.Y. 226, 22 N.E.2d 350; Horowitz v. Manufacturers' Trust Co., 1934, 239 App.Div. 693, 268 N.Y.S. 729; Callaghan v. Bailey, 1943, 179 Misc. 673, 38 N.Y.S.2d 203, aff'd. 266 App.Div. 915, 43 N.Y.S.2d 516,

aff'd. 293 N.Y. 396, 57 N.E.2d 729. Compare, Cohen v. City of New York, 1940, 283 N.Y. 112, 27 N.E.2d 803.

38. Connell v. Walker, supra; Dabney v. Chase National Bank, supra; Cowans, Bankruptcy Law and Practice, §§ 624, 761 (1963). See also, Constance v. Harvey, 2 Cir., 1954, 215 F.2d 571, cert. denied, 1955, 348 U.S. 913, 75 S.Ct. 294, 99 L.Ed. 716 and Conti v. Volper, 2 Cir., 1956, 229 F.2d 317 (§ 70 sub. c of the Act).

39. See p. 67, supra, setting forth the debenture provision upon which the Trustee relies. Although the pleading seeks avoidance and recovery of all payments to plaintiff under the "Severance Agreement," the Trustee modified his position upon oral argument. Transcript, supra, n. 5, at 15. See, however, Moore v. Bay, supra.

40. We disregard on this motion the separate stock interests of plaintiff and his son, as well as the corporate relationship between AFR and Burlington.

On May 17, 1957, two agreements were simultaneously executed. In one (hereinafter "Stock Sale Agreement"), with plaintiff as seller and the individual defendants as buyers, the buyers agreed to purchase seller's stock holdings in AFR and Burlington for a total price of $223,-220. In the second (referred to herein as "Severance Agreement"), entered into by Buchman and AFR, it was acknowledged that Buchman, as founder of AFR (1950) and actively employed by it since then, had rendered services which contributed significantly to the growth and development of AFR's business. "For services rendered," AFR agreed to pay Buchman $47,500: $5,000 by discharging his indebtedness to AFR in that amount; $14,234 by assignment to him of life insurance policies on his life; $28,226 in cash. Further, severance pay was fixed at $26,200. Buchman agreed to defer payment on a $25,000 promissory note payable by AFR to him and to remain available until December 31, 1958 for consultation services despite termination of his employ.[41] The individual defendants fully performed the "Stock Sale Agreement," as did AFR the "Severance Agreement."[42]

The Trustee does not assert that AFR was insolvent in either the equity or bankruptcy sense at the time of these agreements, nor that it was rendered so by their performance.[43] Moreover, he does not contravert minutes of director and stockholder meetings approving, ratifying and confirming the agreements.[44]

The Trustee does, however, view the payments to plaintiff as gratuitous transfers of AFR's assets, which, in facilitating the sale by Buchman of his stock to the individual defendants, amounted to a distribution of corporate assets to the holders of all the issued and outstanding Class A stock of AFR.[45]

It is noted at the outset that courts are not unfamiliar with the informalities, often irregularities, commonly attendant upon carrying out of the affairs of the closely-held corporation. Distributions for the benefit of shareholders may have been made without formal declaration of dividend by the board of directors. Indeed, directors may have informally agreed to a distribution, Griffin v. Brody, Adler & Koch Co., Sup.1917, 167 N.Y.S. 725; shareholders owning all the issued and outstanding stock may have periodically made withdrawals, see Barr & Creelman Mill, etc., Co. v. Zoller, 2 Cir., 1940, 109 F.2d 924; or by practice, with unanimous shareholder consent, corporate funds are expended to pay bills owed by them, Little v. Garabrant, 1895, 90 Hun, 404, 35 N.Y.S. 689, aff'd on opin.

41. The Trustee challenges the "Severance Agreement" as made by AFR without consideration; for past consideration, and for inadequate consideration. Trustee's Memorandum, filed March 25, 1965, pp. 11–17. He concedes that if the consideration were adequate, his claim must fail. Transcript, supra, note 4, at page 14. Without making findings thereon, however, we assume, for these motions, that there was no consideration to AFR.

42. We are not presently concerned with the Trustee's first counterclaim alleging that Buchman breached fiduciary duties imposed on him by the "Severance Agreement."

43. Indeed, the evidence would lead us to hold to the contrary, See Exhibits "K"-"N" annexed to the individual defendants' Notice of Motion, filed May 5, 1965. We do not understand testimony of defendant Alexander F. Pathy, rendered upon oral deposition May 4, 1962, to suggest the contrary. See Sections 34, 37–8 of the Trustee's moving affidavit attached to his Notice of Motion, filed March 25, 1965.

44. See copies of minutes of meetings annexed to the affidavit of Marie Louis deMontmollin, sworn to April 30, 1965.

45. In support of this view, the Trustee points to paragraph five of the "Stock Sale Agreement" entitled "Warranty of Validity of Agreement" which, after reciting that AFR is entering an agreement with Buchman, bearing even date and covering termination of his employ, states: "To induce Samuel Buchman to sell his capital stock hereunder, the Buyers hereby warrant that said agreement is valid and that the obligations imposed thereunder upon said corporation are binding upon it."

below, 1897, 153 N.Y. 661, 48 N.E. 1105 (premium paid on life insurance policies in which corporation had no interest); Newfield v. Oosterhuis, 2 Cir., 1943, 137 F.2d 437.

Where corporate profits have been distributed as excessive salaries, such amounts have been treated as dividends for various purposes. See, e. g., Shaw v. Ansaldi, Inc., 1917, 178 App.Div. 589, 165 N.Y.S. 872 (testing excessive salaries under statutory restrictions on dividends).

In situations where corporate assets, with unanimous shareholder consent, have been used in "sell-out" transactions, such as the one the Trustee suggests took place here, some courts have viewed the transaction as equivalent to payment of an informal dividend, determining its substantive validity under dividend provisions of corporation statutes. See, e. g., Bulger v. Colonial House, 1953, 281 App.Div. 847, 119 N.Y.S.2d 233; In re Bay Ridge Inn, Inc., 2 Cir., 1938, 98 F. 2d 85; In re Yukon Ice Cream Co., E.D. N.Y., 1941, 41 F.Supp. 466; see also, Grand Rapids Trust Co. v. Ben Rose Tire Co., 1933, 264 Mich. 268, 249 N.W. 847;

Whitfield v. Kern, 1937, 122 N.J.Eq. 332, 192 A. 48 and 1939, 125 N.J.Eq. 511, 6 A.2d 471; but cf. Rosenkranz v. Doran, 1942, 264 App.Div. 335, 35 N.Y.S.2d 413.[46]

Despite such informality, however, where corporate action constitutes a "severance" of a dividend,[47] and its payment left the corporation solvent, the "dividend aspect" has been accorded little weight on the theory that a solvent corporation can make gifts with unanimous shareholder consent. Brooklyn Trust Co. v. Jesper, 1936, 248 App.Div. 896, 290 N.Y.S. 642, aff'd without opinion, 1937, 274 N.Y. 629, 10 N.E.2d 584.

Along with such cases treating corporate payments as distributions violative of statutory restrictions upon dividends,[48] and those involving fraud upon stockholders or creditors [49] (neither situation being claimed here), the Trustee in construing the debentures also relies upon the "constructive dividend" concept developed under state and federal revenue codes.[50] In this area, corporate claims to tax deductions for expenses ordinarily and necessarily incurred in the course of business have been challenged (or dis-

---

46. In such cases, it has been said that it is the selling shareholder who receives the "dividend." See In re Bay Ridge Inn, Inc., supra. For internal revenue purposes, however, it is the buying shareholders who must account for use of corporate assets. See Holsey v. C.I.R., 3d Cir., 1958, 258 F.2d 865.

47. See Ballentine, Corporations (1946) 562; Kehl, Corporate Dividends (1941) 155, 278.

48. In re Bay Ridge Inn, supra and In re Yukon Ice Cream Co., supra, involving violations of Section 58, New York Stock Corporation Law, McKinney's Consol. Laws, c. 59 (bankrupt corporation's chattel mortgages to secure payments on inter-stockholder sale of corporate stock treated as dividend distribution, impairing capital and fraudulent to creditors); Hutchinson v. Stadler, 1903, 85 App.Div. 424, 83 N.Y.S. 509 (distributions deemed dividends from capital). See also, Re Fletcher's Trust, 1959, 20 Misc.2d 686, 189 N.Y.S.2d 791.

49. Williams v. McClave, 1915, 168 App.Div. 192, 154 N.Y.S. 38 (accounting action

by bankruptcy trustee against officers and directors involving, in part, salary for services not rendered; for three years when capital not depleted thereby, held: no accounting; contra, where payment depleted capital at time company operated at a loss); Godley v. Crandall & Godley Co., 1914, 212 N.Y. 121, 105 N.E. 818, L.R.A.1915D, 632, modifying 1912, 153 App.Div. 697, 139 N.Y.S. 236 (stockholder action in behalf of corporation; excessive salary to officer as fraud upon stockholders); Miller v. Crown Perfumery Co., 1908, 57 Misc. 383, 109 N.Y.S. 760, aff'd (with modifications) 125 App.Div. 881, 110 N.Y.S. 806 (stockholder action charging conspiracy to deprive plaintiff of share in corporate profits by causing corporation to adopt resolutions of payment to defendants of excessive salaries).

50. See, e. g., Bittker, Federal Income Taxation of Corporations and Shareholders (1959) § 5.02; 1 Merten's Law of Federal Income Taxation (1962) §§ 9.07, 9.08, 9.11, 9.12, 9.21 n. 39 (1965 Supp.) § 9.08.

allowed) and the transaction regarded as a distribution of corporate profits for which the recipients must account.[51]

Plaintiff and the individual defendants, claiming these cases are inapposite, argue that what is "treated as a dividend" must be distinguished from what "constitutes a dividend." We agree.

 Various types of transactions, as indicated above, have been characterized as dividend payments in cases interpreting (and giving effect to the salutory purposes underlying) internal revenue regulations and statutes restricting declaration of dividends. Indiscriminant acceptance of such characterizations, however, may well be misleading, if not erroneous, in determining the meaning of "dividends" as used in the general corporate sense or in a particular debenture provision.[52]

In this case, AFR agreed that "so long as any past due installments of principal remain unpaid [under the debentures] it will not declare any dividends upon any class of its capital stock * * *." [53]

The Trustee does not rely upon any formal declaration. In construing "dividends," he makes no references (and none are disclosed) to other contractual re-

strictions placed on the use of corporate surplus and earnings.[54] Under his view, any corporate gift, waste of assets or ultra vires property transfer by which stockholders receive a benefit would be a "dividend" within the meaning of the debentures. We cannot agree.

 As a specie of contract, debenture provisions are interpreted in accord with the intent of the parties. Although doubt or ambiguity is generally said to be resolved against the issuing corporation, their terms are to be fairly construed in light of the context and all surrounding circumstances. See In re Fosdick's Trust, 1958, 4 N.Y.2d 646, 176 N.Y.S.2d 966, 152 N.E.2d 228; Kelly v. Central Hanover Bank & Trust Co., S.D.N.Y., 1935, 11 F.Supp. 497, rev. and rem'd without passing on point, 2 Cir., 1936, 85 F.2d 61. Moreover, here there is no ambiguity.

 Without evidence that the term "dividend" was accorded a special or unusual connotation by the contracting parties (or indeed, that the debentures were "bargained for"), that term must be given no more and no less than the scope of its ordinary meaning in the

---

51. See, e. g. Lorimier-Greenbaum Co., Inc. v. Gilchrist, 1925, 212 App.Div. 733, 209 N.Y.S. 633; People ex rel. H. Jaeckel & Sons v. Gilchrist, 1924, 209 App.Div. 120, 204 N.Y.S. 509. See also, United States v. Philadelphia Knitting Mills, 3 Cir., 1921, 273 F. 657; Chattanooga Savings Bank v. Brewer, 1927, 6 Cir., 17 F.2d 79, cert. denied 1927, 274 U.S. 451, 47 S.Ct. 764, 71 L.Ed. 1332.

52. See 1 Merten, supra §§ 9.01 n. 3, 9.03. The word "dividend" has been described as "a word of general and indefinite meaning and usually has not, in law, any particular and technical signification, although by context and connection it may so have." 27 C.J.S. Dividend at 831; see also 18 C.J.S. Corporations § 458. Under New York law, "dividend" signifies distribution of profit and earnings of a corporation to its shareholders. In re Fosdick's Trust, 1958, 4 N.Y.2d 646, 176 N.Y.S.2d 966, 152 N.E.2d 228 (stock dividends). Although formally it is to be set aside by corporate directors for pay-

ment at a fixed time, see People ex rel. Pullman Co. v. Glynn, 1909, 130 App. Div. 332, 114 N.Y.S. 460, formal declaration may be dispensed with in certain cases. See, e. g., Young v. United States, Mortgage & Trust Co., 1915, 214 N.Y. 279, 108 N.E. 418; In re Norton's Will, 1927, 129 Misc. 875, 224 N.Y.S. 77; Griffin v. Brody, Adler & Koch Co., Sup.1917, 167 N.Y.S. 725.

53. See p. 67, supra.

54. The debentures in question were not secured by a trust indenture; do not provide for a sinking fund; do not, in terms, provide for the contingency of waste. Such matters could have been expressly incorporated by the parties. Indeed, it has been said that today the principal restraint upon dividend distribution results not from legislation or common law prohibitions, but rather from contractual restrictions imposed through debt financing or preferred stock issuance. See Kriedmann, Dividends—Changing Patterns, 57 Colum.L.Rev. 372 (1957).

context used.[55] If the Trustee's interpretation were to be adopted, the Court, under the guise of construction would reform the debenture. This it cannot do.

■ Accordingly, we hold, as a matter of fact and law, that the payments to plaintiff by AFR at a time it was solvent were not violative of the anti-dividend provision contained in the debentures then held by the infants or to which they would have been entitled had recission been sought and granted.

## SUMMARY

The Trustee has stated a claim upon which relief under Section 70, sub. e of the Bankruptcy Act could be granted. The claim is not barred by the applicable state statute of limitations, which is tolled by infancy. In any event, the limitations defense is at best partial and, for these motions, we assume no part of the claim to be barred.

On the merits, the impugned transfers to plaintiff are not, as a matter of fact or law, "dividends" within the meaning of the debentures relied upon and the Trustee's claim therefore has not been established.

## CONCLUSION

The Trustee's motion, under Rule 56, F.R.Civ.P. for summary judgment on his second counterclaim and cross claim is denied.

Individual defendant's cross motion, under Rule 56, F.R.Civ.P. for summary judgment on the Trustee's second cross claim is granted.

Treating plaintiff's request for summary judgment in his behalf on the Trustee's second counterclaim as a motion under Rule 56, F.R.Civ.P., see Field v. Lew, supra, the motion is granted.

On a quantitative and qualitative review of the undisputed evidence, in light of the applicable law, the Trustee's second counterclaim and cross claim is dismissed, entry of judgment to abide disposition of the other claims in this litigation.

Jurisdiction to determine award of costs, disbursements and attorneys fees, if any, is hereby reserved.

The foregoing shall constitute this Court's findings of fact and conclusions of law as required by Rule 52, F.R.Civ.P.

This shall be considered an order, settlement thereof is unnecessary.

---

55. In interpreting the language of statutory restrictions on dividends, stating it is to be construed as the average business man would read and understand it, see Randall v. Bailey, 1942, 288 N.Y. 280, 43 N.E.2d 43.